■ PETER MONDELLO, as Administrator of the Estate of DIANNE MONDELLO and Another, Deceased, Appellant, v NEW YORK BLOOD CENTER-GREATER NEW YORK BLOOD PROGRAM, Respondent, et al., Defendants.—Order, Supreme Court, New York County (Helen Freedman, J.), entered April 18, 1990, which, *inter alia,* granted the motion of defendant-respondent New York Blood Center-Greater New York Blood Program to dismiss plaintiff's causes of action for wrongful death on the ground that they were barred by the Statute of Limitations, unanimously reversed insofar as appealed from, on the law, the motion denied and the causes of action reinstated, without costs.

The events which resulted in this law suit began in November, 1984, when plaintiff's decedent, Dianne Mondello, delivered a stillborn child at defendant New York Hospital ("Hospital"). Unbeknownst to anyone at the time, one of the multiple transfusions received by Ms. Mondello was allegedly contaminated with the HIV virus. Before becoming aware that she was infected, Ms. Mondello became pregnant again and gave birth to a daughter, Tamara, on June 13, 1986, who was also infected with the virus. Tamara Mondello died of AIDS on December 15, 1986, and Dianne Mondello died of AIDS on January 5, 1987.

On July 6, 1987, plaintiff brought the within action on behalf of the estates of his wife and daughter to recover for their deaths and conscious pain and suffering against the Hospital and the attending physicians, as those responsible for the 1984 delivery.

On July 13, 1989, plaintiff served both an amended complaint and a new complaint naming a new party, the New York Blood Center-Greater New York Blood Program ("Blood Center"), seeking to recover, insofar as is relevant to this appeal, for the decedents' wrongful death. The Blood Center moved to dismiss on the grounds that the two year Statute of Limitations applicable to actions for wrongful death (EPTL 5-4.1) had run. In responding, plaintiff's attorney stated, *inter alia,* that the medical records received from the Hospital had contained copies of the labels from the blood and blood derivatives *(i.e.,* packed cells, fresh frozen plasma, cryoprecipitate and platelets, hereinafter referred to collectively as "blood")

transfused into Dianne Mondello, and that all of them had been labeled, "New York Hospital Blood Bank". He also stated that, in spite of his inquiries, the Hospital had not informed him that the blood had actually been obtained by it from the Blood Center until June 19, 1989. Plaintiff argued that, pursuant to CPLR 203 (b), the complaint against the Blood Center related back to the original complaint served upon the Hospital because the parties are united in interest. The IAS court granted the Blood Center's motion, primarily on a finding that defendants had demonstrated that the Hospital and the Blood Center, a not-for-profit corporation which collects blood from volunteer donors and supplies it to 240 hospitals, are separate and unaffiliated legal entities and they were therefore not united in interest.

CPLR 203 (b) provides that, for purposes of computing periods of limitation, a claim asserted in the complaint is interposed at the time of service both against a defendant who is actually served and "against * * * a co-defendant united in interest with him [sic]". This provision has been interpreted so as to permit the interposition of a claim even against a defendant who is not named in the original pleadings, so long as "(1) both claims arose out of the same conduct, transaction or occurrence * * * (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits * * * and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well". (Brock v Bua, 83 AD2d 61, 69; see also, Hawksby v New York Hosp., 162 AD2d 179; Virelli v Goodson-Todman Enters., 142 AD2d 479.)

In the instant case, there is no question that the first prong of this test has been satisfied, since the claims against both the Hospital and the Blood Center arise out of the same allegedly tainted transfusion. Both the Blood Center and the Hospital, however, claim that the second prong, that the new party be united in interest with the party who was actually served, was not satisfied.

Parties are united in interest when "the interest of the parties in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other" (Prudential Ins. Co. v Stone, 270 NY 154, 159). Thus, where one of the parties is vicariously liable for the conduct of the other, they will generally be considered to be

united in interest. *(Raschel v Rish,* 69 NY2d 694; *Connell v Hayden,* 83 AD2d 30.)* For these purposes, unity of interest does not turn upon whether the person who was actually served is the one who is directly liable or the one vicariously liable. *(Supra; see also, Matter of Parker v Port Auth.,* 113 AD2d 763.)* Rather, the most important consideration is whether the service which has been effected protects the defendant sought to be added by the fact that the party who was served was obliged through necessity to investigate and prepare all of the defenses available to both. If so, service on the original party acts to satisfy one of the underlying purposes ordinarily satisfied by imposition of the Statute of Limitations, *i.e.,* that delay in bringing the action not deprive a defendant of a fair opportunity to prepare a defense.

In this case, it is argued that the Hospital is vicariously liable for any negligence of the Blood Center in collecting and distributing the blood. In order to establish such liability on the Hospital's part, we need go no further than the regulations established by the State of New York, through the Department of Health, setting minimum standards for all hospitals within the State. These regulations state that a hospital "shall be responsible for services furnished in the hospital whether or not they are furnished by outside entities under contracts [and] * * * shall ensure that a contractor of services * * * furnishes services that permit the hospital to comply with all applicable codes, rules and regulations." (10 NYCRR 405.2 [h]; *see also,* 10 NYCRR 405.2 [a], which provides that the operator of the hospital "shall be legally responsible for the quality of patient care services"; 10 NYCRR 400.4 [a] [4], which requires that service contracts "include the following language: 'Notwithstanding any other provision in this contract, the facility remains responsible for ensuring that any service provided pursuant to this contract complies with all pertinent provisions of Federal, State and local statutes, rules and regulations' ".)

While blood itself is a substance *(Di Marco v Hudson Val. Blood Servs.,* 147 AD2d 156), defendants can hardly claim that provision of blood to a patient is not a service and therefore outside the scope of these regulations. It was long ago settled that in providing blood to a patient, a hospital is providing a service, the main object of which is "the care and treatment of the patient". *(Perlmutter v Beth David Hosp.,* 308 NY 100, 106.)* Indeed, this principle has since been codified in Public Health Law § 580 (4), which provides, "The collection, processing, storage, distribution or use of blood or a blood derivative

for the purpose of diagnosis, prevention or treatment of disease or the assessment of medical condition is hereby declared to be a public health service and shall not be construed to be, and is declared not to be, a sale of such blood or blood derivative, for any purpose or purposes whatsoever."

Defendants claim that these regulations cannot mean that the Hospital would be held liable for the negligence of the Blood Center, and cite in support a number of cases which establish that a hospital is not vicariously liable for the medical malpractice of physicians who are independent contractors (see, e.g., Raschel v Rish, supra). However, these cases are not relevant to the situation before us. The regulation at issue in the instant case, regarding the Hospital's liability for services provided by contract, is clearly not meant to apply to the Hospital's medical staff, which is dealt with independently in a separate subdivision of the same regulation (10 NYCRR 405.2 [e]). Notably, that subdivision contains no comparable provision regarding the Hospital's liability for the acts of its medical staff, which must therefore be assumed to be governed by the general rule that, absent special circumstances, a party is not vicariously liable for the negligence of an independent contractor. (Restatement [Second] of Torts § 409.) The cited cases have no applicability to the Hospital's liability under section 405.2 (h) for other types of services provided by independent contractors and in no way imply that the clear meaning of that section should be disregarded.

Defendants also argue that, in spite of the regulatory provisions making the Hospital liable for services rendered to a patient, the Hospital would not be liable for the harm caused by negligently collected blood because the State, in addition to the Federal Government, has seen fit to regulate blood banks and, in particular, has required them to test blood for various diseases at the time it is collected from the donor (10 NYCRR 58-2.3, 405.16 [e]). Defendants contend that, since the Hospital did not participate in the collection of the allegedly infected blood, and since there are no allegations that the Hospital itself improperly cross-matched the blood as it was required to do at the time of transfusion (10 NYCRR 58-2.16), the Hospital cannot be liable.

This argument is misplaced. The Hospital's potential liability is not based on any presumption that it should have performed the tests itself or on its delegation of a non-delegable statutory duty. (Cf., Restatement [Second] of Torts § 424.) Quite simply, the Hospital would be vicariously liable, assuming negligence by the Blood Center incidental to the collection

of the blood is established, because the State has decreed such liability. Thus, in this instance, as in other cases where vicarious liability is created by legislative fiat *(see, e.g.,* Vehicle and Traffic Law § 388), it is more accurate to say that the Hospital's liability, rather than its duty, is non-delegable. *(See, discussion, Feliberty v Damon,* 72 NY2d 112, 118-119.) To hold otherwise, merely because the Blood Center is also subject to regulation, would completely vitiate those regulations which provide that a hospital will remain responsible for all services provided to its patients. To accept the defendants' independent contractor argument would be to permit a hospital to escape liability to a patient for substandard care furnished in the hospital by the simple expedient of showing that the outside entity which provided the service was itself required to comply with certain regulations. This, however, would be in direct conflict with the express language in the Department of Health regulation governing a hospital's responsibility even where the service is furnished by an outside entity. (10 NYCRR 405.2 [h].) The regulatory scheme which applies here was clearly designed to permit a patient recourse against a hospital itself, regardless of actual fault.

In view of our finding that the governing regulations would render the Hospital vicariously liable for negligence of the Blood Center which proximately contributed to the decedents' death, it is unnecessary to determine whether, even in the absence of these regulatory provisions, the facts of this case might present an exception to the general rule that parties are not liable for the negligence of independent contractors either because plaintiff reasonably looked only to the Hospital for the performance of this service *(see, Hill v St. Clare's Hosp.,* 67 NY2d 72; *Miles v R & M Appliance Sales,* 26 NY2d 451; *Mduba v Benedictine Hosp.,* 52 AD2d 450, 453-454; Restatement [Second] of Torts § 429) or because the harm caused arose from a danger inherent in the work *(see, Boylhart v DiMarco & Reimann,* 270 NY 217; Restatement [Second] of Torts §§ 416, 427).

Our finding that the Hospital here would be vicariously liable for any negligence by the Blood Center in providing the blood, mandates the conclusion that they are united in interest with identical defenses.

The third, and final, prong necessary to invoke CPLR 203 (b) requires plaintiff to show that his failure to join proper parties at the outset was not due to his own inexcusable neglect. *(Brock v Bua, supra,* at 69; *see also, Fraccola v City of Utica Bd. of Water Supply,* 142 AD2d 936; *Hawksby v New York*

*Hosp., supra.)* This he has clearly done. Plaintiff's uncontested allegations show that the records he received from the Hospital contained only the name of the Hospital's own blood bank and did not indicate that the blood had been obtained elsewhere. Moreover, plaintiff brought the action against the Blood Center promptly after he was informed that it was the true source of the blood.

This is precisely the kind of situation which is contemplated as a basis for invoking the ameliorative statutory provision. The controlling considerations in that regard are delineated in *Brock v Bua (supra,* at 70) as follows: "there are cases in which the nature of the underlying conduct, transaction or occurrence makes ascertainment of all the proper defendants impossible within the period of limitations or where one potentially liable person has concealed or misled the plaintiff as to his identity until the expiration of the statute. In those cases the law balances the plaintiff's right to sue all those responsible for his injury against the inconvenience to the new defendant of defending against a belated claim, and in light of the fact that the new party is united in interest with a defendant who was timely served and who did have the opportunity to make an investigation within the period of limitations, it finds the plaintiff's interests to be the weightier and opts to remove the bar of the Statute of Limitations." Concur—Carro, J. P., Rosenberger, Ellerin, Kassal and Rubin, JJ.