OPINION OF THE COURT
Bellacosa, J.
This legal controversy, still at its early but critical motion stages, originates with the deaths, apparently of complications from AIDS-related diseases, of an infant child in late 1986 and her mother in early 1987. In 1984, the mother received intravenous transfusions of apparently HIV-infected blood. Her widower instituted an action in 1987 against defendant-appellant New York Hospital (Hospital) and several physicians on behalf of himself and his deceased spouse’s and daughter’s estates. Insofar as relevant to the singular Statute of Limitations issue before us in this case, the 1987 complaint was amended in 1989 to add the New York Blood Center (Blood Center) as a defendant.
At this juncture, we must decide whether the wrongful death causes of action against the Blood Center were started too late and are thus time barred. Unless the defendant Hospital and putative defendant Blood Center are "united in interest” within the meaning of CPLR 203 (b) and Brock v Bua (83 AD2d 61), the wrongful death causes of action against the party added in 1989, defendant Blood Center, are concededly untimely and cannot relate back to the timely commenced action against defendant Hospital.
Supreme Court determined that the parties were not united in interest and dismissed as to the Blood Center. The Appellate Division reversed (175 AD2d 718). We agree with Supreme Court’s dismissal of the wrongful death causes of action against the Blood Center on the ground that the Hospital and Blood Center are not united in interest for purposes of avoiding the pertinent time bar.
I
Diane Mondello suffered a placental abruption in November *224 1984, which caused the death of the near-term child she was carrying at that time. In the course of being treated in the New York Hospital under emergency circumstances for this and subsequent complications, she was given a large number of blood transfusions. It eventually became known and undisputed that the blood and blood parts which she received were collected, tested and provided by the Blood Center. Prior to being used in her treatment, the blood was routed through the Hospital’s licensed and accredited blood bank. About a year and a half later, Mondello gave birth to a daughter. The child died six months later in December 1986, and the mother died less than a month after that in January 1987. The apparent cause of death for both victims was complications associated with AIDS.
The surviving spouse and father brought suit in July 1987, against New York Hospital and several physicians, alleging negligence in the "medical care, treatment and services provided” to the mother and daughter, and for their wrongful deaths. In a bill of particulars, plaintiff set forth the distinct theory that the Hospital had not properly collected and screened the blood used in the transfusions to the mother in connection with the 1984 emergency treatment.
In May 1989, plaintiff served a notice for discovery and inspection to trace the source of the transfused blood. Counsel for the New York Hospital, in June 1989, identified the Blood Center as the source. Plaintiff promptly amended his original complaint against the Hospital in an attempt to add the Blood Center as a defendant and to state additional causes of action against the Hospital. A new, separate complaint was also initiated against the Blood Center. In both complaints, the Blood Center was charged under theories of negligence, including the "testing, manufacture, inspection, distribution, promotion and sale” of blood products.
Supreme Court dismissed those causes of action against the Blood Center which sounded in strict product liability and breach of warranty, noting that, by statute, the collection, processing and dispensing of blood is a "public health service” and not a "sale of such blood or blood derivative, for any purpose * * * whatsoever” (Public Health Law § 580 [4]). That court, however, declined on prematurity grounds to dismiss causes against the Blood Center sounding in negligence for loss of services and for conscious pain and suffering. These were deemed governed by the "toxic substance” discovery rule *225 of CPLR 214-c and, thus, additional disclosure would be necessary to ascertain the dispositive discovery date.
The only part of Supreme Court’s ruling now before us is the dismissal of the wrongful death causes of action against the defendant Blood Center on Statute of Limitations grounds. The court noted that the two-year bar of EPTL 5-4.1 would apply to those actions, unless plaintiff could demonstrate that the Blood Center and the Hospital were united in interest within the meaning of CPLR 203 (b). If such unity of interest were present, the amended and new complaints of 1989 would relate back for Statute of Limitations purposes to the date of the originally commenced action in 1987. The court concluded, however, that the Hospital and Blood Center were "at most joint tortfeasors and not parties united in interest.”
The Appellate Division, First Department, reversed the dismissal of the wrongful death causes of action (175 AD2d 718). It adopted and applied the relation back test formulated by the Appellate Division, Second Department, in Brock v Bua (83 AD2d 61, 69, supra), which embossed the bare language of CPLR 203 (b) with a three-pronged application. The Appellate Division found all three prongs satisfied in this case.
Its analysis of the second prong, unity of interest of the defendant parties, has emerged as the central dispositive focus of this appeal. The Appellate Division noted that unity of interest will generally be found where one of the parties is vicariously liable for the conduct of the other (Raschel v Risk, 69 NY2d 694). It found vicarious liability between the Hospital and the Blood Center rooted in a perceived State policy reflected in certain regulations of the New York State Department of Health (175 AD2d, at 722, supra). These regulations, among other things, declare that "[t]he governing body [of the hospital] shall be responsible for services furnished in the hospital whether or not they are furnished by outside entities under contracts” (10 NYCRR 405.2 [h] [emphasis added]). The Appellate Division thus found it unnecessary to determine whether, "even in the absence of these regulatory provisions, the facts of this case might present an exception to the general rule that parties are not liable for the negligence of independent contractors either because plaintiff reasonably looked only to the Hospital for the performance of this service * * * or because the harm caused arose from a danger inherent in the work” (175 AD2d, at 722, supra). We find it necessary to address and resolve the latter questions because *226 plaintiff now concedes that the regulation relied on by the parties and Appellate Division up to this point in the litigation was not in effect at the relevant time at issue. It simply is not dispositive in this case.
n.
The CPLR 203 (b) relation back rule provides in pertinent part that a "claim asserted in the complaint is interposed against the defendant or a co-defendant united in interest * * * when: 1. the summons is served upon the defendant” (compare, Shaw v Cock, 78 NY 194 [1879]). The Appellate Division, in Brock v Bua (83 AD2d 61, supra), gave the rule a three-prong specificity, patterned largely after the Federal "relation back” test codified in rule 15 (c) of the Federal Rules of Civil Procedure (see generally, 1 Weinstein-Korn-Miller, NY Civ Prac If 203.05, at 2-92, 2-93; compare also, Duffy v Horton Mem. Hosp., 66 NY2d 473, 476-477). The Brock test examines whether (1) both claims arose out of the same conduct, transaction or occurrence; (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that the new party will not be prejudiced in maintaining its defense on the merits by the delayed, otherwise stale, commencement; and (3) the new party knew or should have known that, but for an excusable mistake by the plaintiff in originally failing to identify all the proper parties, the action would have been brought against the additional party united in interest as well (Brock v Bua, supra, at 69). All three features must be met for the statutory relation back remedy to be operative.
We endorse the Brock test and apply it in this case, concluding essentially that the second prong is not met. Because we conclude that the Hospital cannot be held vicariously liable for the alleged negligence of the Blood Center in the discharge of the Blood Center’s discrete responsibilities, we cannot say that the interest of the Hospital and the Blood Center "in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other” (Prudential Ins. Co. v Stone, 270 NY 154, 159).
Generally, liability in negligence is premised on a wrongdoer’s own fault, not the fault of others (see, Feliberty v Damon, 72 NY2d 112, 117). Vicarious liability, somewhat like strict products liability, is an exception to the general proposition *227 that limits one’s liability to one’s own wrongdoing. Exceptions such as these evolve out of a complex mix of policy considerations concerning spreading and allocating risks and providing recourse in damages as a means of recompense and deterrence. Always in making such calibrated choices a "line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit” (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055). In particular, problems of blood contamination and the control of the epidemic spread of HIV and AIDS present the sort of "grave problem[] * * * exciting high priority activity on the part of the national, State and local governments” toward which the courts should be reluctant to "foist a presumed cure * * * by judicial innovation of a new kind of liability in tort” (see, Riss v City of New York, 22 NY2d 579, 582).
The delivery of medical services in hospitals is meticulously governed by a web of professional, legislative, judicial and regulatory precepts which assign duties and apportion liabilities. Because of its unique and critical nature, the handling of human blood has been treated with particularly close governmental scrutiny. Thus, despite the fact that modern rules of strict products liability in tort customarily apply when products, including medicinal products, are in commerce between manufacturers, suppliers, intermediaries and users, that has not been so in the case of the blood supply. Like a number of other States, New York has chosen to treat human blood differently. New York defines "[t]he collection, processing, storage, distribution or use of blood or a blood derivative” for medical purposes to be a "public health service” (see, Public Health Law § 580 [4] [emphasis added]). In so doing, the State shields blood providers and this uniquely different "service” from ordinary strict tort liability precepts and remedies.
Public Health Law § 580 (4), a legislative codification of the holding in Perlmutter v Beth David Hosp. (308 NY 100, rearg denied 308 NY 812), thus contributes significantly to our analysis of the liability implications and relationships involved in supplying blood. Notwithstanding the intertwined practical logistics of the collection, distribution and delivery processes, we are faced with a precedent and statute that treat the flow of blood from its source to an ultimate recipient as a unique discrete service. For the purposes of imposing liability, the provision of blood is viewed as a continuum of service made up of segmented duties and responsibilities *228 imposed consecutively on the purveyors of that service, up to and including giving the blood to the patient. This approach is consistent with the allocation scheme erected by the Legislature through the Department of Health, apportioning some duties to blood collection agencies and others to hospitals (compare, e.g., 10 NYCRR 58-2.17 [specifying tests to be performed prior to transfusions], with 10 NYCRR 58-2.3 [specifying tests to be performed on blood "collected from the donor at the time of each donation”]).
Also, we have construed the undertaking which a hospital makes to a patient in a hospital to be less than a plenary assumption of all medical responsibilities and services (Florentino v Wenger, 19 NY2d 407, 414). Most pointedly, when treatment is provided by an independent physician, the physician, not the hospital, is regarded as rendering a direct professional service to the patient. The relationship between an independent physician and the hospital does not thrust vicarious liability on the hospital for all the actions of the doctor (id.). This settled principle is somewhat shaken by the vicarious liability analysis in this case by the Appellate Division which, seemingly aware that its interpretation might be viewed as too all-encompassing, tried to trim the sweep of its holding. It stated that the Health Department regulations on which it was relying did not apply to services furnished by physicians who are independent contractors, since the governing body’s relations with the hospital’s "medical staff * * * is dealt with independently in a separate subdivision of the same regulation (10 NYCRR 405.2 [e])” (175 AD2d, at 721, supra).
We do not mean to suggest that the legal relationship between hospitals and physicians who provide services in hospitals is determinative of the relationship between blood service providers and hospitals. Rather, the comparison serves to defuse the mistaken generality that the hospitals must be viewed as total care providers with a common, united interest with all other providers. Plaintiff would have the Hospital charged with undertaking to provide a holistic health and medical service that includes all aspects of a blood supply service from donor through collector to recipient. We are unable to accept that view and its corollary: that the Hospital has delegated part of its duty to the Blood Center. The Hospital has not transferred to the Blood Center any responsibility for performing its own uniquely nondelegable hospital functions; nor is the converse true. Each has a distinct role, not necessarily and legally united. Thus, we conclude that the *229 Hospital and Blood Center provide respective, complementing parts of a "public health service” to the Hospital’s patients (Public Health Law § 580 [4]). Their discrete responsibilities, as a matter of policy choice on the allocation of vicarious tort liability, may be related but they are not legally united.
The ostensible agency doctrine of Hannon v Siegel-Cooper Co. (167 NY 244) does not change our analysis or result. The principle of Hannon is reflected in Restatement (Second) of Torts § 429: "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by [its] servants” is liable for the negligence of the "contractor”. We applied this principle in Hill v St. Clare’s Hosp. (67 NY2d 72) by attributing malpractice vicariously to the physician-owner of a medical clinic "which is held out to the public as offering medical services” (id., at 75). However, here, the Hospital did not hold itself out as having screened blood for contagious disease or furnish any personnel for that purpose. Moreover, we see no basis to assign a generalized expectation or to credit individual subjective beliefs that a hospital is performing certain highly technical tests when that duty is already reposed by regulation in sophisticated and specialized blood collection entities. It may be that blood testing duties existed independently in each of these parties, but we see no reason why each should not answer for its own wrongdoing under the general tort principle of personal responsibility, not one for another’s wrongdoing by way of vicarious attribution, invoked to allow a bypass of the otherwise applicable Statute of Limitations.
Also, no one can doubt that the provision of blood carries with it inherent grave dangers. There could be no more dramatic example than the instant case, where the transfusions of blood allegedly led to the tragically interrelated deaths of two people. Though the medical consequences in this case are frightening, poignant and distressing, we must nevertheless remain mindful in the assignment of liability context that "[t]he art of healing frequently calls for a balancing of risks and dangers to a patient” (Perlmutter v Beth David Hosp., 308 NY 100, 107, supra). In the case of blood services, the Legislature, this Court and regulatory agencies have balanced some of the dangers and risks. The choices that are made surely and dramatically affect, for good or ill cannot always be known, the manner and kind of services that are rendered by the respective medical care providers.
*230 The subject wrongful death causes of action here, our only focus, rest entirely on the potential vicarious liability of the Hospital for the discrete wrongdoing of the Blood Center as a predicate for the application of the relation back provision of CPLR 203 (b). We conclude that CPLR 203 is not a time machine by which the late lawsuit against the Blood Center can be given life by carrying it back to the earlier date of the timely commenced lawsuit against the defendant Hospital, because the Hospital should not be vicariously liable for the pertinent alleged negligent acts of the Blood Center.
IIL
Inasmuch as we conclude that a basis for vicarious liability in these circumstances is absent, it does not suffice that the first prong of Brock v Bua (83 AD2d 61, supra) is met — that the complaints against both the Hospital and the Blood Center did arise out of some of the same "conduct, transaction or occurrence,” the provision of allegedly HIV-infected blood to Diane Mondello. We note also that, under the circumstances presented, we have no occasion to address and resolve the third prong of Brock concerning the excusability of the conduct of plaintiffs counsel in not timely suing the Blood Center.
The narrow aspect of the procedurally complicated case that we decide today does not bear on the direct liability of the New York Hospital for any of its own wrongdoing. Plaintiff has alleged in his second amended complaint that the Hospital was "grossly negligent” in the "medical care, treatment and services provided” to his wife, and plaintiff has further alleged in a bill of particulars that this negligence encompassed the failure of the Hospital to properly screen the blood used in the transfusions to his wife in 1984. As the timely actions against the Hospital go forward, plaintiff will be afforded an opportunity to prove that the Hospital was negligent under a variety of theories, including its selection of the Blood Center as a blood provider (see, e.g., Davidson v Hillcrest Gen. Hosp., 40 AD2d 693). Furthermore, our ruling today does not affect any other timely instituted action against the Blood Center.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant Blood Center’s motion to dismiss the wrongful death causes of action granted.
*231 Chief Judge Wachtler and Judges Simons, Kaye, Titone and Hancock, Jr., concur; Judge Smith taking no part.
Order reversed, with costs, and defendant Blood Center’s motion to dismiss the wrongful death causes of action granted, and certified question answered in the negative.