Joshua **HEDVAT** and Status Clothing, Inc., Plaintiffs,

v.

**L.F. ROTHSCHILD**, Unterberg, Towbin, and Aaron L. Heimowitz, Defendants.

No. 84 Civ. 9187(JES).

United States District Court, S.D. New York.

Aug. 20, 1997.

Joseph S. Ingber, New York City, for Plaintiffs.

O'Reilly, Marsh, Kearney & Corteselli P.C., Mineola, NY; Joseph J. Kearney, of Counsel, for Defendant Aaron L. Heimowitz.

Cravath, Swaine & Moore, New York City; John R. Hupper, Thomas G. Rafferty, of Counsel, for 28 of the 50 Proposed Defendants.

Solomon, Fornari, Weiss & Moskowitz, New York City; Jacob Inwald, of Counsel, for Proposed Defendant Robert Schoenthal.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Joshua Hedvat, individually and as assignee of Yehiel Hedvat, his brother, and Status Clothing, Inc., a New York corporation of which Joshua Hedvat is the sole owner, officer and employee (together "plaintiffs"), filed the instant securities action against L.F. Rothschild, Unterberg, Towbin ("Rothschild"), a New York partnership with over fifty general partners, and Aaron L. Heimowitz ("Heimowitz"), a former broker employed by the partnership (together "defendants"). Pursuant to Federal Rule of Civil Procedure 41(b), Heimowitz moves to dismiss the action for failure to prosecute. Pursuant to Federal Rules of Civil Procedure 19, 20, 21 and 55, plaintiffs cross-move for leave to join fifty partners of Rothschild as individual defendants [1], or in the alternative, to direct entry of a judgment by default against Rothschild. For the reasons set forth below, Heimowitz's motion to dismiss the action as against him for failure to prosecute is granted, plaintiffs' cross-motion to add the individual partners as defendants is denied, and plaintiffs' cross-motion to direct entry of a default judgment against Rothschild is granted.

## BACKGROUND

On December 20, 1984, plaintiffs commenced the instant action seeking damages for breach of contract, breach of fiduciary duties, negligence, common law fraud, securities fraud, and RICO violations. Plaintiffs allege that in 1980, Hedvat opened three brokerage accounts at Rothschild in which he deposited $100,000 in his brother's name, $29,985 in his own name and $27,378 in his corporation's name. See Second Amended Complaint ("Sec.Am.Cmplt.") ¶ 11. According to plaintiffs, Heimowitz assumed complete control over the accounts and caused them to incur huge losses by investing in highly speculative, unauthorized, unsuitable investments; made numerous false and misleading representations regarding the accounts; and refused to sell certain investments upon request. Plaintiffs seek approximately $5,000,000 in compensatory damages and $10,000,000 in punitive damages.

On March 29, 1985, the Court directed the parties to complete all discovery on or before July 1, 1985, file a Pre–Trial Order on or before August 2, 1985, and be ready for trial on October 1, 1985. See Order dated April 1, 1985. On July 12, 1985, the Court extended the parties' time to complete discovery until August 31, 1985. See Order dated July 15, 1985. On September 20, 1985, defendants orally moved for an order to preclude plaintiffs from introducing certain tapes at trial which purportedly contained conversations between Hedvat and Heimowitz. See Stipulation dated September 30, 1985. On consent of the parties, the Court referred that dispute to Magistrate Judge Buchwald, who issued a Report and Recommendation concluding that the tapes were authentic, that they were not made under duress, and that Heimowitz's statements could not be considered admissions of Rothschild. See Transcript dated February 7, 1986; Memorandum from Magistrate Judge Naomi Reice Buchwald to Judge Sprizzo dated February 10, 1986. Furthermore, Magistrate Judge Buchwald ruled on a sentence by sentence basis whether particular portions of the tapes constituted

---

1. Twenty-eight of the fifty proposed individual partners, who were either partners in Rothschild or shareholders in Chapter S corporations that were partners, submitted a joint response to plaintiffs' cross-motion. Proposed defendant Robert Schoenthal has also submitted a response.

admissions by Heimowitz. *Id.*[2] On February 14, 1986, the Court directed the parties to submit a Pre–Trial Order on or before April 30, 1986. The Pre–Trial Order and Requests to Charge were submitted in May 1986.

At a Pre–Trial Conference held on May 23, 1986, LFR & Co. indicated that it intended to move to dismiss plaintiffs' RICO claim on the ground that the Second Circuit had held that a RICO claim could not be sustained where the person sued was identical with the alleged racketeering enterprise. *See* Affidavit of Bernard J. Jaffe Sworn to October 10, 1986 ("Jaffe Aff."), attached to Order to Show Cause dated October 10, 1986, ¶ 2. Plaintiffs indicated that they wished to file an amended complaint. However, no motions were thereafter filed.

On October 10, 1986, plaintiffs' counsel submitted an Order to Show Cause why an order should not be issued permitting him to withdraw as attorney of record for plaintiffs. *See* Order to Show Cause dated October 10, 1986. In his affidavit attached to the Order to Show Cause, counsel stated that his relationship with Hedvat, as the individual plaintiff and principal of the corporate plaintiff, had deteriorated so drastically that Hedvat no longer had any trust or confidence in him.

*See* Jaffe Aff., ¶ 2. On October 17, 1986, the Court orally granted plaintiffs' counsel's application.[3]

By Affidavit dated September 15, 1987, Hedvat notified the Court that his counsel had withdrawn, and requested that the Court not dismiss the case while he sought an attorney. The Court therefore placed the action on the Suspense Calendar on September 29, 1987, and advised Hedvat that if he failed to restore it to the Trial Calendar on or before September 30, 1988, the Court would dismiss the action for failure to prosecute. *See* Order dated September 29, 1987. Furthermore, by Minute Order dated June 27, 1988, Chief Judge Brieant administratively closed the action.

In or about July 1988, Hedvat retained a second attorney and the Clerk's Office was instructed to re-open the case. By Stipulation and Order dated October 12, 1988, defendants consented to plaintiffs' request to file an amended complaint, which was filed on December 9, 1988. On September 13, 1989, the Court directed that an Amended Pre–Trial Order be filed on or before November 30, 1989, and that thereafter counsel for all parties be prepared to proceed to trial on forty-eight hours notice. *See* Order dated

**2.** Based on the Court's review of the case file, it does not appear that the parties submitted any objections to Magistrate Judge Buchwald's Report and Recommendation. However, portions of the official file have been lost and/or were never properly docketed.

Moreover, in or about December 31, 1985, Rothschild ceased operations as a broker dealer, and all of Rothschild's assets were transferred to LFR & Co. pursuant to an Assumption Agreement. *See* Assumption Agreement, attached as Exh. B to Gersten Savage, Kaplowitz & Curtin's Notice of Motion dated February 9, 1993 ("Gersten Mot."). Thereafter, LFR & Co. assumed all of the liabilities of Rothschild, replaced the partnership as a broker dealer, and assumed responsibility for the defense of the instant action although Rothschild was still named as the lead defendant in all three complaints.

**3.** Specifically, counsel stated that (1) he advised Hedvat that plaintiffs' RICO claim should be withdrawn, but that Hedvat adamantly refused, (2) Hedvat purportedly insisted that an "answer" be filed in response to defendants' original answer, and questioned why counsel had not requested that the Court recuse itself, (3) counsel explained that there were no grounds for those

applications, but Hedvat became angry and said that counsel had "sold him to ROTHSCHILD," and (4) Hedvat was unwilling to advance any money required to retain expert witnesses. *See* Jaffe Aff. ¶¶ 3–6, 8.

Plaintiffs' counsel also advised the Court with Hedvat's consent that Hedvat had been under the treatment of a psychiatrist, who advised that Hedvat was "obsessed with this case and emotionally distraught," that in the psychiatrist's opinion, Hedvat "is preoccupied with revenge and tempted to take matters into his own hands," and that Hedvat had told counsel that defendants had ruined his life, that he cannot be held responsible for his actions, and that he now feels that everyone, including his counsel and the Court, were against him and abusing him. *See* Jaffe Aff. ¶ 7.

The Court further notes that a suggestion was made at least privately by counsel that he had received threats from Hedvat and that counsel was concerned about his own physical well-being. *See* Transcript of Oral Argument dated January 26, 1996, at 20. It should also be noted that prior to immigrating to the United States as an Israeli citizen, Hedvat purportedly served in the Israeli Army for five years, specializing in munitions. *See* Complaint ¶ 5.

September 14, 1989. That deadline was extended by the parties by Stipulation and Order until January 26, 1990, with a ready-trial date of February 9, 1990. *See* Stipulation and Order dated December 1, 1989; Stipulation and Order dated December 14, 1989.

The parties submitted an Amended Pre-Trial Order on February 1, 1990, and on May 14, 1990, the Court scheduled a trial for October 22, 1990. However, on October 17, 1990, the Court notified the parties that the Trial would have to be adjourned until November 26, 1990. *See* Order dated October 18, 1990. However, because of conflicts in the Court's calendar, the Trial did not go forward on the latter date either.

On January 4, 1991, L.F. Rothschild & Co., Incorporated ("LFR & Co ."), filed a petition under Chapter 11, and on January 7, 1991, sought a stay of the instant action. The Court placed the action with respect to Rothschild only on the Suspense Calendar until December 6, 1991. *See* Order dated January 9, 1991.

On April 18, 1991, plaintiffs' second counsel indicated that he wished to withdraw stating that Hedvat had become angry because counsel would not assert a claim regarding defendants' alleged sale of certain Compaq Computer shares, which counsel considered frivolous. *See* Declaration of Richard Caro dated July 11, 1991, attached Notice of Motion dated July 11, 1991, ¶¶ 3–6. Moreover, he indicated that Hedvat was obsessed with the action which he perceived to be one big conspiracy against him, and that

Hedvat stated that he would take matters into his own hands. *Id.*[4]

On May 24, 1991, the Court held a hearing to evaluate Hedvat's competency and reviewed a psychologist's report directed to that issue. *See* PTC Notes May 24, 1991. The Court concluded that Hedvat was not incompetent, but merely fixed in his positions, and directed counsel to continue his representation. *See* Order dated April 19, 1991.

Thereafter, the Court held several Pre-Trial Conferences with counsel and Hedvat present. Plaintiffs' second counsel submitted to the Court a motion to withdraw.[5] After hearing Oral Argument on July 31, 1991, the Court reserved decision to allow counsel and Hedvat one last opportunity to reach an agreement. *See* PTC Notes September 21, 1991. By Order dated November 19, 1991, the Court granted counsel's motion to the limited extent that counsel need not represent plaintiffs on any claims concerning Compaq Computer shares, but continued to reserve decision with respect to counsel's representation on all other claims. In addition, the Court permitted plaintiffs to file a second amended complaint to include any claims concerning Compaq Computer shares whereupon the Court would issue an order severing those claims. *See* Order dated November 19, 1991. The Court also directed that counsel for plaintiff could make an application to the Bankruptcy Court to lift the stay for the purposes of prosecuting all claims in the second amended complaint not severed. *See* Order dated November 19, 1991. A second amended complaint was filed on December 16, 1991.[6]

---

4. The Court's notes of the Conference also reflect that counsel indicated that Hedvat had stated to him that he wanted to proceed against the partners. *See* Pre-Trial Conference notes ("PTC notes") April 18, 1991 (where necessary, the Court has cited to information contained in its Pre-Trial Conference notes.) The Court indicated that suit against them might be barred. *Id.*

5. It appears from the case file that that motion was never formally filed, although a courtesy copy was submitted to Chambers.

6. On January 13, 1992, in Bankruptcy Court, plaintiffs moved for leave to file a late proof of claim against LFR & Co. After conducting a hearing, Bankruptcy Judge Burton R. Lifland

lifted the stay of the instant action and allowed the late proof of claim, which was appealed by the Official Committee of Unsecured Creditors. *See* Gersten Mot. ¶ 9. By letter dated March 25, 1992, counsel for LFR & Co. explained to the Court that it had just learned that Rothschild had in fact been dissolved in 1986, and therefore, the January 4, 1991 petition for bankruptcy applied to the corporation only. Counsel stated that the Court thus may have acted on a misimpression in suspending the action against the partnership, which had, by that point, been lifted.

By Opinion dated July 14, 1992, Judge Stanton reversed Bankruptcy Judge Lifland's decision, and denied plaintiffs' motion. *Id.* ¶ 13. In October 1992, the Bankruptcy Court approved a liquidation plan for LFR & Co. *Id.* ¶ 14.

On January 24, 1992, Hedvat indicated that he wished to clarify the status of certain claims and requested leave to file a third amended complaint asserting a manipulation claim. *See* PTC Notes January 24, 1992.[7] By Order dated February 3, 1992, the Court directed that plaintiffs' claims regarding Compaq Computer shares be severed and prosecuted by Hedvat *pro se*, and directed that plaintiffs' RICO claims be severed and tried subsequent to trial of the existing claims by plaintiffs' counsel. Furthermore, the Court denied Hedvat's request for leave to file a third amended complaint. *See* Order dated February 3, 1992.

By Order dated April 15, 1992, after Hedvat continued alleging wrongdoing by his second counsel, the Court concluded that an irreconcilable conflict of interest appeared to exist which rendered plaintiffs' second counsel's continued representation inappropriate. The Court therefore relieved plaintiffs' second counsel, and indicated that plaintiffs should retain a new attorney on or before July 1, 1992, and that if plaintiffs did not retain new counsel, that Hedvat should proceed *pro se*. *See* Order dated April 15, 1992.

On July 10, 1992, the Court fixed a trial date for April 19, 1993. *See* Order dated July 14, 1992; PTC Notes July 10, 1992. Because Hedvat expressed reluctance in representing himself, the Court advised Hedvat that he should find a lawyer before that time, or submit an application for appointment of counsel supported by an affidavit setting forth his financial resources, and that it might be some time before an attorney agreed to accept appointment. *See* PTC Notes July 10, 1992.

On January 8, 1993, counsel for LFR & Co. and Heimowitz, and Hedvat proceeding *pro se*, appeared before the Court for a Pre–Trial Conference. *See* Order dated January 14, 1993. The Court indicated to the parties that the April 1993 Trial date might be adjourned due to a possible overlap with a criminal trial. *See* PTC Notes January 8, 1993. In addition, counsel for LFR & Co. indicated that he wished to file a motion to withdraw as counsel since LFR & Co. had been dissolved. *Id.* The Court scheduled a filing date for the motion and scheduled Oral Argument for May 21, 1993. *Id.*[8]

By Order dated May 24, 1993, the Court granted LFR & Co.'s counsel's application to withdraw. Moreover, the Court directed that if defendant L.F. Rothschild, Unterberg, Towbin and/or its representative failed to appear at the next Pre–Trial Conference scheduled for September 3, 1993, the Court would entertain an application for judgment by default. All parties except Heimowitz failed to appear at the September 3, 1993 Pre–Trial Conference. *See* Order dated September 8, 1993. Therefore, Heimowitz orally moved to dismiss the action for failure to prosecute, which the Court denied. *See* Notice of Motion to Dismiss for Failure to Prosecute dated August 15, 1994, ¶ 4. The Court placed the action on the Suspense Calendar until September 3, 1994, scheduled a Pre–Trial Conference for July 8, 1994, and advised plaintiffs that if they failed to prosecute the action on or before July 8, 1994, the Court would dismiss the complaint. *See* Order dated September 8, 1993. Plaintiffs failed to appear. *See* Order dated July 11, 1994.

By Order dated July 11, 1994, the Court directed that Heimowitz could file a motion to dismiss for failure to prosecute on or before August 1, 1994, plaintiffs could file a response on or before September 1, 1994, and a Pre–Trial Conference would be held on December 1, 1994. By cover letter dated August 19, 1994, Heimowitz mailed a courte-

---

The Court further notes that during the course of the bankruptcy proceedings, plaintiffs rejected an offer made by LFR & Co. to settle the action for approximately $150,000. *See* Transcript of Oral Argument dated January 26, 1996, at 23.

7. By letter dated January 28, 1992, plaintiffs' second counsel renewed his request to withdraw, and indicated that Hedvat had stated to him that he would get even and that "there would be the 'justice of all justices.'"

8. On January 22, 1993, the Court mailed a copy of its Order to Hedvat at the address he provided at the Conference. However, the Order was returned addressee unknown. Since Hedvat had never provided the Court with his phone number and none of the five boroughs of New York had a published listing for him, the Court was unable to contact Hedvat in any other manner.

sy copy of his motion to the Court. However, no official copy was ever docketed by the Clerk's Office. Nor does the official file contain a copy of the motion to date.

At some point in 1994, Hedvat retained a third attorney, who investigated whether plaintiffs' case was still viable. *See* Affidavit in Opposition to Defendant's Motion to Dismiss Sworn to August 10, 1995, ¶ 26. Plaintiff's third counsel states that he attempted to assemble a complete file, but plaintiffs' prior attorney could not be located, and much of the Court's official file had been misplaced or could not been found. *Id.* Moreover, plaintiff's third counsel indicates that in November 1994, he received a telephone call from the Court notifying him that Heimowitz's motion to dismiss would be decided on December 16, 1994. *See* Ingber letter dated December 1, 1994.

Thereafter, plaintiffs' counsel wrote to the Court to request a status Conference since none of the attorneys whom he could locate knew the status of the case, and many of their files had been transferred to storage. *Id.* The Conference was adjourned until February 16, 1995. *See* Affidavit in Opposition to Defendant's Motion to Dismiss Sworn to August 10, 1995, ¶¶ 29, 30.[9] On March 6, 1995, the Court So–Ordered a Stipulation substituting as attorney of record plaintiffs' third counsel in place of Hedvat, who was still proceeding *pro se.*

On May 10, 1995, plaintiffs and Heimowitz appeared before the Court for a Pre–Trial Conference. *See* Order dated May 17, 1995. The Court directed that defendants could file a motion to dismiss the action for failure to prosecute on or before June 30, 1995, which would be deemed filed *nunc pro tunc* to August 15, 1995(sic). *Id.*[10] Moreover, the Court directed that plaintiffs could file a cross-motion for leave to file a third amended complaint on or before August 30, 1995, and that they should serve a copy of the cross-

motion upon all parties plaintiffs propose to include as additional defendants. *Id.* On May 23, 1995, pursuant to Federal Rule of Civil Procedure 41(b), Heimowitz's moved to dismiss the action for failure to prosecute. On August 14, 1995, pursuant to Federal Rules of Civil Procedure 19, 20, 21 and 55, plaintiffs cross-moved for leave to join fifty partners of Rothschild as individual defendants, or in the alternative, to direct entry of a judgment by default against Rothschild.

## DISCUSSION

### I. Heimowitz's Motion To Dismiss

Pursuant to Federal Rule of Civil Procedure 41(b), a defendant may move to dismiss an action or any claim against a defendant for a plaintiff's failure to prosecute.

In *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) (quoting *Harding v. Federal Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Merker v. Rice,* 649 F.2d 171, 174 (2d Cir.1981))), the Second Circuit enumerated five factors the Court should consider in determining the appropriateness of dismissal:

(1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*See also Lucas v. Miles et. al.,* 84 F.3d 532, 534 (2d Cir.1996). No single factor is ordinarily dispositive, *see Nita v. Conn. Dep't. Of Envtl. Protection,* 16 F.3d 482, 485 (2d Cir. 1994), and the threshold for dismissal is heightened where a *pro se* litigant fails to satisfy procedural requirements. *See Lucas,*

---

**9.** Due to a miscommunication, plaintiffs' counsel was not advised that the Pre–Trial Conference had been moved from February 17, 1995, to February 16, 1995, and therefore missed the Conference. *See* Affidavit in Opposition to Defendant's Motion to Dismiss Sworn to August 10, 1995, ¶¶ 29, 30.

**10.** The Court's Order has two errors. First, it reflects that all counsel appeared for the Conference. The Court presumes that at that stage no counsel appeared for the partnership since its counsel had withdrawn. Second, the Court's Order should have reflected that defendants' motion would be deemed filed *nunc pro tunc* to August 15, 1994.

84 F.3d at 534. However, dismissal is discretionary, see e.g., Dodson v. Runyon, 86 F.3d 37, 39 (2d Cir.1996), and is a harsh remedy appropriate only in extreme situations. See Alvarez, 839 F.2d at 932. In this case, all five Alvarez factors overwhelmingly favor dismissal as against Heimowitz.[11]

■ In October 1986, while the case was pending on the Court's ready trial calendar, Hedvat's conduct and his refusal to accept his lawyer's advice required counsel to withdraw. The Court therefore placed the case on the Suspense Calendar where it remained inactive for approximately 21 months. After new counsel had been obtained, in 1991 and 1992, Hedvat continued to insist that counsel pursue certain claims which appeared frivolous, and which his attorney felt he could not, consistent with his professional responsibility, pursue. That conduct caused a continued deterioration in his relationship with counsel, which, notwithstanding the Court's efforts to promote a mechanism for reconciling counsel's professional concerns and his representation of Hedvat on some of his claims, finally caused the second counsel to seek leave to withdraw. Thereafter, for a 22 month period from on or about January 22, 1993, until approximately November 1994, plaintiffs took no action in the case and could not be even reached by the Court. These circumstances, considered either alone or in combination, overwhelmingly favor dismissal. See Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666–68 (2d Cir.1980) (dismissing case after six months of inactivity); Stoenescu v. Jablonsky, 162 F.R.D. 268, 271 (S.D.N.Y.1995) (dismissing case after 21 months of inactivity); West v. New York, 130 F.R.D. 522, 525 (S.D.N.Y.1990) (dismissing case after 19 months of inactivity).

Moreover, the Court expressly warned plaintiffs twice that a failure to prosecute could result in dismissal of the action. In September 1987, the Court advised Hedvat that if he failed to restore the action to the Trial Calendar on or before September 30, 1988, the Court would dismiss the action for failure to prosecute. Again by Order dated September 8, 1993, the Court warned Hedvat that if he failed to prosecute the action on or before July 8, 1994, the Court would dismiss the action for failure to prosecute. While it is unclear whether Hedvat received the latter Order since prior mail had been returned to the Court addressee unknown, it was Hedvat's responsibility to keep the Court advised as to where and how he could be reached, and his failure to discharge that responsibility cannot serve as a justification for not actually knowing what he clearly would have known had he fulfilled his obligations to the Court. See United States District Courts for the Southern and Eastern Districts of New York, Joint General Rule 3(b).

Furthermore, the periods of delay described above have prejudiced Heimowitz. While the total delay of 55 months properly attributable to the plaintiffs is in itself so prolonged as to raise a presumption of prejudice, see Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir.1982) (where there is unreasonable delay in the prosecution of an action, "prejudice to the defendants ... may be presumed."), in this case there are factual circumstances which in whole or in part compel a finding of prejudice. Not only has Heimowitz endured three complaints, two discovery periods, and the need to be ready for trial on multiple occasions, there is a clear basis for finding that the defense of this case has been rendered difficult if not impossible due to the lapse of time. For example, LFR & Co., now defunct, was given permission in bankruptcy to destroy its records, and some of LFR & Co.'s assets have been taken over by the RTC. See Transcript of Oral Argument dated January 26, 1996 at 25–26. Furthermore, many witnesses have already moved on to other jobs and places and will be unnecessarily more difficult to locate. Indeed, the difficulty that the Court and coun-

11. The Court is mindful that this case does not resemble the typical, garden-variety motion to dismiss in which a plaintiff has done little or nothing to prosecute his or her case. Indeed, from time to time, plaintiffs have taken action to prosecute the case, but the reality is that Hedvat's problems with counsel have resulted in an inordinate delay—55 months—creating a virtual impossibility for Heimowitz to defend the action. Further, the Court recognizes that some of plaintiffs' claims may have merit; however, that fact is insufficient to defeat a properly supported motion to dismiss for failure to prosecute. See Link, 370 U.S. at 633, 82 S.Ct. at 1390; Schwarz v. United States, 384 F.2d 833, 835 (2d Cir.1967) (fact that some of a plaintiff's claims may have merit does not warrant denying motion to dismiss).

sel have had in obtaining and reconstructing Court files and records in itself provides some insight into what the problems will be in preparing this case for trial.

Turning to the balance between alleviating the congestion of the Court's calendar and preserving Hedvat's right to due process and an opportunity to be heard, the facts of the instant case demonstrate "compelling evidence of an extreme effect on court congestion." *Lucas,* 84 F.3d at 535. It is clear from the facts recited above that there is no question that this case could and would have been tried long ago but for Hedvat's recurring problems with counsel which arose primarily from an adamant resistance to work with them and the Court, in getting claims tried which could have been tried by the simple expedient of withdrawing or at least deferring other, less meritorious claims.

Nor is the Court left with lesser sanctions which could remedy plaintiffs' failures. Sanctions will not refresh faded memories from the early 1980's, locate witnesses who may have moved or passed away, or retrieve records that in all likelihood have been lost. This is especially true since when considering "the appropriate sanction for failure to prosecute an action, the more the delay was occasioned by plaintiff's personal obstruction ... the more suitable the remedy of dismissal." *Dodson,* 86 F.3d at 40.[12]

## II. Plaintiffs' Cross-motion to Amend

■ Under Federal Rule of Civil Procedure 15, leave to amend a complaint "shall be freely granted when justice so requires." Fed.R.Civ.P. 15(a). However, the Court may deny a plaintiff's application where amendment would be futile or result in undue prejudice to the proposed defendants. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (discussing factors court may consider); *Zahra v. Town of Southold,* 48 F.3d 674 (2d Cir.1995) (citations omitted) (leave to amend lies within discretion of district court).

■ In this case, granting plaintiffs' motion would be futile since there is no basis for any of plaintiffs' otherwise time-barred claims to relate back to the filing of the complaint. Under Rule 15(c), an amendment of a pleading is deemed to relate back to the date of the original pleading when: (1) the party to be brought in by amendment has received such notice of the institution of that action that the party will not be prejudiced in maintaining a defense on the merits, knew or should have known that but for a mistake concerning the identity of the proper party the action would have been brought against the party, and the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or (2) relation back is permitted by the law that provides the statute of limitation applicable to the action.

Under New York law, which provides the statute of limitation for plaintiffs state law claims, relation back is permitted if both claims arose out of the same conduct, trans-

---

12. The Court rejects plaintiffs' argument that Heimowitz's motion should be denied because "[w]hatever may have transpired to date, [p]laintiffs have now retained new counsel to represent them and are pressing forward with their case." Plaintiffs' Memorandum of Law at 9. Were the Court to accept that argument it would have to ignore all five *Alvarez* factors in this case.

Moreover, the Court rejects plaintiffs' argument that Heimowitz acquiesced in the delay. *See Finley v. Parvin Dohrmann Co.,* 520 F.2d 386, 392 (2d Cir.1975) ("failure of a defendant to call the court's attention to a plaintiff's undue delay in bringing a case on for trial, by formal motion or otherwise, may be considered as a factor in informing the court's discretion."); *Schenck v. Bear, Stearns & Co., Inc.,* 583 F.2d 58 (2d Cir. 1978) (denying motion to dismiss 13 month old action where counsel's inaction spanned 11 months, there had been no prior prodding of the plaintiff by the court or by defendants, and the court could have imposed a lesser sanction such as an order requiring the case be ready for trial by a certain date). Here, Heimowitz did not need to raise plaintiffs' failures to the Court since the *Court* raised the issue *sua sponte* in 1986 and 1993. In any event, Heimowitz orally moved for dismissal as early as 1993, when plaintiffs failed to appear at a Conference.

Finally, the Court notes that Heimowitz has not engaged in any conduct of a dilatory nature which could form a basis upon which to deny his motion. *See Saylor v. Bastedo,* 623 F.2d 230 (2d Cir.1980) (*sua sponte* dismissal and approval of settlement in lieu of dismissal an abuse of discretion in a derivative suit where trial judge had already fixed deadline for discovery, no notice was given to plaintiff, and delays attributable to all parties.) Indeed, Heimowitz has at all times diligently defended the action.

action or occurrence, the new party is united in interest with the original defendant and by reason of that relationship can be charged with such notice of the institution of the action that the new party will not be prejudiced in maintaining its defense on the merits by the delayed, otherwise stale commencement, and the new party knew or should have known that but for a mistake by the plaintiff in originally failing to identify all of the proper parties, the action would have been brought against the additional party united in interest as well. *See* CPLR § 203(b) (McKinney's 1990); *Buran v. Coupal,* 87 N.Y.2d 173, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995) (adopting federal rule that mistake requirement of relation back doctrine does not require an *excusable* mistake); *Mondello v. New York Blood Center,* 80 N.Y.2d 219, 590 N.Y.S.2d 19, 604 N.E.2d 81 (1992); *Brock v. Bua,* 83 A.D.2d 61, 443 N.Y.S.2d 407.

Here, it is clear that plaintiffs' decision not to pursue the original partners was a deliberate strategic choice and not the result of any mistake as to who was intended to be sued. This is especially true since at a Pre–Trial Conference held on April 18, 1991, after the corporate successor to the partnership had filed for bankruptcy, counsel for plaintiffs stated that Hedvat wanted to *change tactics* and pursue the partners. However, he did not. Instead, plaintiffs sought to pursue the corporate successor, LFR & Co., by filing a notice of claim in bankruptcy court. That being so, the mere fact that that strategic choice may have been improvident cannot transform a bad strategic choice into a basis for relief under Rule 15(c).

Nor can the individual partners be charged with notice of the action such that they would not now be prejudiced. In this case, there is no indication in the case file that any partner was ever individually named, let alone individually served. Indeed, the case file contains a proof of service form for the partnership entity. *See* Summons to L.F. ROTHSCHILD, UNTERBERG, TOWBIN filed January 9, 1985; *see also* Answer by L.F. Rothschild, Unterberg, Towbin filed January 28, 1985. This is especially true since eleven years had passed since plaintiffs initiated the action and three years had passed since plaintiffs unsuccess-fully pursued the same claims against the partnership's corporate successor in bankruptcy court.

Plaintiffs argue that, pursuant to CPLR § 1502, the individual partners would be liable for up to six years on a separate action brought against their individually held property to enforce a judgment against the partnership, and therefore the individual partners would suffer no prejudice to now be added. However, that argument ignores the requirement established for amending a pleading under Rule 15(c) and New York law that there be a mistake in the identity of the defendant named to be sued.

Moreover, the Court is aware of no New York cases brought pursuant to CPLR § 1502 to enforce such a judgment against individually held property where, as here, a plaintiff has elected to pursue his or her claims in bankruptcy court against a partnership's corporate successor, but failed to perfect the claim. In any event, since as noted below a default judgment is being entered against the partnership, there is no need to amend here. Plaintiffs are free to assert these claims in a more appropriate forum, the state court, which can and should assess the validity of plaintiffs' contention that the individual property of the partners may properly be used to satisfy that judgment.

■ Plaintiffs also argue that relation back is not required because naming and serving the partnership tolled the statute of limitations against the individual partners since they are "united in interest" with the partnership. However, in this case, plaintiffs have known since at least 1992 that the partnership was dissolved and that the corporate successor had been liquidated in bankruptcy. Thus, any conceivable "unity of interest" was terminated as of that date. In any event, where, as here, plaintiffs have waited *eleven* years to add the partners in their individual capacity, the Court does not find that equity warrants granting the amendment and forcing the individual partners to defend such stale claims.

### III. Plaintiffs' Cross–Motion For A Default Judgment Against Rothschild

■ The Court possesses the inherent power to dismiss the claims against Roths-

child *sua sponte. See Link v. Wabash Railroad Co.,* 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). However, the Court does not find it a proper exercise of its power to do so here. Since 1993, the partnership has been in default for failure to appear. Furthermore, unlike Heimowitz, there can be no prejudice to the partnership since it is in default, and will not be defending the action any further. Nor will granting a default judgment significantly further impair or consume the resources of the Court.

## CONCLUSION

For the reasons set forth above, Heimowitz's motion to dismiss the action against him with prejudice for failure to prosecute is granted, plaintiffs' cross-motion to add additional defendants is denied, and plaintiffs' cross-motion to direct entry of a judgment by default against Rothschild is granted. The action shall be referred to Magistrate Judge Bernikow for an inquest into damages.

It is **SO ORDERED.**