1997 ND 161

**Ken PECHTL and Sandra Pechtl, Plaintiffs and Appellants,**

v.

**CONOCO, INC., Defendant and Appellee.**

**Civil No. 970051.**

Supreme Court of North Dakota.

Aug. 11, 1997.

Rehearing Denied Sept. 8, 1997.

Fred E. Whisenand, of Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Williston, for defendant and appellee.

Glen R. Bruhschwein, of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for plaintiffs and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Ken Pechtl and his wife, Sandra, appealed from a summary judgment dismissing their negligence action against Conoco. We hold the Pechtls failed to raise a genuine issue of material fact that Conoco retained control of the operative details of the work of its independent contractor, Steier Oil Field Services, or Steier's foreman, Thomas Schmidt. We affirm.

[¶ 2] In 1989 Conoco and Steier entered into a "blanket contract" for Steier to do oilfield work as an independent contractor for Conoco.[1] In 1993 Conoco and Steier executed a separate "letter agreement" for Steier to do roustabout work for Conoco.

[¶ 3] Conoco was the operator of the Ridl # 1–11 well in Stark County, and in March 1995 Conoco directed Steier to install a production facility at the well. The Steier employees at the Ridl well included Schmidt and Ken Pechtl. The parties do not dispute the jobsite was unusually muddy, and pipes for the well were not stacked in pipe racks. Instead, the pipes were spread out on the ground. According to Ken Pechtl, he injured his right foot and ankle both when he caught his foot between two pipes lying on the ground and when he stumbled on the slippery and irregular work surface. Pechtl's right leg became infected and was ultimately amputated below the knee.

[¶ 4] The Pechtls sued Conoco, alleging Conoco had retained control of Steier's work at the Ridl well and breached its duty to provide Ken Pechtl with a safe workplace. The Pechtls alleged the combination of an unusually muddy jobsite and pipes lying on the ground created an unsafe workplace. Conoco denied it was negligent and asserted Steier retained control of work at the Ridl well.

[¶ 5] The trial court granted summary judgment for Conoco, concluding Steier's employee, Schmidt, was not an agent or loaned or dual employee of Conoco and therefore Conoco was not vicariously liable for any negligence by Schmidt. The court also ruled Conoco owed no duty to Ken Pechtl because it had not retained control over the manner and method of Steier's work at the Ridl well.

[¶ 6] We review this case under the summary judgment standards of N.D.R.Civ.P. 56. Summary judgment is a procedure for deciding an action without a trial if, after viewing the evidence in the light most favorable to the party opposing summary judgment and giving that party the benefit of all favorable factual inferences which can reasonably be drawn from the evidence, there are no genuine disputes as to either the material facts or the inferences to be drawn from the undisputed facts, or if resolving the disputed facts would not change the result. *Kristianson v. Flying J Oil & Gas, Inc.*, 553 N.W.2d 186 (N.D.1996). If the moving party meets its initial burden of showing the absence of genuine issues of material fact, the opposing party may not rest upon mere allegations or denials in the pleadings, but must present admissible evidence establishing a genuine issue of material fact. *Id.* A party opposing summary judgment must draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other documents containing testimony or evidence raising a genuine issue of material fact. *Id.*

1. The "blanket contract" provided:
   "*Independent Contractor.*
   "It is expressly understood that Contractor [Steier] is an independent contractor and that none of the personnel supplied or used by Contractor or its subcontractors shall be deemed to be servants, agents or employees of Company [Conoco] and, as an independent contractor, Contractor agrees to comply with all laws, rules and regulations of federal, state and local governments (and subdivisions and agencies thereof) which now are, or in the future may be, applicable to its business, equipment and employees engaged in or in any manner connected with Contractor's performance hereunder. Company shall have no direction or control of the method or manner in which the Work is performed by Contractor pursuant to this Contract, but shall be interested solely in determining that the desired results are secured. As an independent contractor, and as stated in Article IV.E. below, Contractor and its subcontractors assume full responsibility for loss of or damage to their material, machinery, equipment or other property while performing hereunder."

[¶ 7] To establish actionable negligence, a plaintiff must show the existence of a duty by the defendant to protect the plaintiff from injury. *Madler v. McKenzie County,* 467 N.W.2d 709 (N.D.1991). Whether or not a defendant owes a plaintiff a duty is generally a preliminary question of law for the court. *Id.* If, however, the existence of a duty depends upon resolution of factual issues, the facts must be resolved by the trier of fact. *Id.*

[¶ 8] The Pechtls contend the trial court erred in dismissing their action because Conoco retained control over Steier's work and Conoco therefore owed Ken Pechtl a duty to exercise that retained control with reasonable care under Restatement (Second) of Torts § 414 (1965).

[¶ 9] Generally, an employer of an independent contractor is not liable for the negligence of its independent contractor. *Kristianson; Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445 (N.D.1994); *Madler.* See Restatement (Second) of Torts § 409 (1965). However, Restatement (Second) of Torts § 414 creates an exception to the general rule for an employer who retains control over the independent contractor's work:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

[¶ 10] In *Fleck,* 522 N.W.2d at 448, we explained the degree of retained control necessary to impose a duty on the employer:

> "The liability created by Section 414 arises only when the employer retains the right to control the method, manner, and operative detail of the work; it is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed. Comment c to Section 414 explains the difference:

> " 'In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.' "

[¶ 11] The doctrine of retained control does not make the employer of an independent contractor vicariously liable for the contractor's acts; rather, it creates a separate basis of liability for the employer's failure to exercise retained control with reasonable care. *Kristianson; Fleck; Zimprich v. Broekel,* 519 N.W.2d 588 (N.D.1994). The duty created by Section 414 may arise either by an express contractual provision giving the employer the right to control the operative details of the independent contractor's work, or by the employer's actual exercise of retained control of the work. *Fleck; Madler.*

[¶ 12] Here, the express language of Conoco's "blanket contract" with Steier said Conoco "shall have no direction or control of the method or manner in which the Work is performed by [Steier] pursuant to this Contract, but shall be interested solely in determining that the desired results are secured." See fn. 1. That explicit language unambiguously gave Steier control over the method, manner, and operative details of its work for Conoco and did not impose a duty on Conoco. *Compare Madler* (contract was ambiguous about extent of employer's retained control).

[¶ 13] The Pechtls nevertheless argue there are disputed factual issues about whether Conoco actually retained control of

the method, manner, and operative details of Steier's work at the Ridl well. The Pechtls rely upon evidence of several facts which, they assert, raise a genuine issue of material fact about whether Conoco retained control of Steier's work: (1) Schmidt's almost exclusive work for Conoco to the extent he was a virtual employee of Conoco; (2) Conoco's extensive employment of Steier for roustabout work for the previous five years; (3) Conoco's involvement with safety issues at the jobsite, including providing Schmidt with a safety manual; (4) Conoco's control over the surface conditions at the Ridl well; (5) Conoco's decision not to use pipe racks at the Ridl well and to start work under adverse weather conditions; (6) Conoco's furnishing equipment to Steier; and (7) Conoco's control over the entire method of operation at the Ridl well.

[¶ 14] Schmidt had been employed by Steier for 16 years, and during the previous five years, he had performed about 98% of his work for Conoco. There was evidence Conoco provided Schmidt with a radio for his work truck, and he reported daily to the Conoco office. In the absence of any evidence Conoco retained control of the manner, method, or operative details of the work by Steier or Schmidt, however, the duration of Steier's independent contractor relationship with Conoco and Schmidt's almost exclusive history of doing Steier's work for Conoco does not raise a factual inference Conoco actually retained control over Steier's work at the Ridl well.

[¶ 15] The Pechtls failed to identify any specific evidence Conoco actually directed Schmidt or other Steier employees on the manner, method, or operative details of the work at the Ridl well. As we explained in *Fleck,* it is not enough for an employer to retain a general right to inspect the work progress or receive reports, to make suggestions or recommendations, or to prescribe alterations or deviations because those general rights are usually reserved to employers of independent contractors. Instead, the employer must retain a right of supervision so

the independent contractor is not entirely free to do the work in its own way. *Kristianson; Fleck; Zimprich; Madler.*

[¶ 16] Here, any control of Schmidt by Conoco was in the context of Conoco's contract with Steier and Schmidt's status as Steier's employee and did not exceed the general rights usually reserved to employers of independent contractors. Schmidt said he was responsible for the pipe, the equipment and the personnel at the Ridl well, including the decision not to use pipe racks. Schmidt also stated that although Conoco had a general right to come onto a location and change the way the operation was going, he was in charge of the workers at the Ridl well. There was no evidence Conoco actually directed Steier or Schmidt to commence work under adverse surface or weather conditions, and an employer's general right to order work stopped or resumed is insufficient to show retained control under Section 414. See *Fleck.*

[¶ 17] There was evidence Conoco was concerned with safety issues and almost exclusively employed Steier for roustabout work to develop a "culture of safety" at the workplace. Conoco's interest in safety at the jobsite, however, does not rise to the level of control required under Section 414. See *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187 (5th Cir.1991) (principal's active interest in safety of employees of its independent contractor does not constitute direct operational control).

[¶ 18] According to Schmidt, except for a threading machine, all of the tools and equipment used at the Ridl well were owned by Steier. Conoco also supplied Schmidt with a radio in his work truck. However, merely because Conoco supplied some equipment to Steier or Schmidt does not support an inference Conoco retained control of Steier's work. See *Kristianson* (merely providing equipment is not the kind of control that creates a duty).

[¶ 19] Although Conoco, as the employer of an independent contractor, had the general

authority to assume some control over decisions at the Ridl well to ensure the desired contractual results were reached, the Pechtls have failed to draw our attention to any evidence raising an inference that Conoco actually retained control of the operative details of work at that well. Any inspections and monitoring by Conoco employees to ensure compliance with the contract do not raise an inference that Conoco retained control of the operative details of Steier's work at the Ridl well to create a duty under Section 414. See *Fleck.* Viewing the evidence in the light most favorable to Pechtls, we conclude the Pechtls failed to raise a genuine issue of material fact that Conoco retained control over the manner, method or operative details of Steier's work at the Ridl well. We hold, as a matter of law, Conoco did not have a duty under § 414.

[¶ 20] Relying on *Ruehl v. Lidgerwood Rural Tel. Co.,* 23 N.D. 6, 135 N.W. 793 (1912), the Pechtls also contend Conoco had a non-delegable duty regarding conditions at the worksite. They argue Conoco retained exclusive possession and control of the worksite and could not shift its duty to provide a safe workplace to Steier.

[¶ 21] To the extent the Pechtls' argument is premised upon Conoco's control of the worksite, it is governed by our resolution of the issue of retained control under Section 414. The Pechtls' reliance on *Ruehl* is also misplaced. In *Ruehl,* a young child died when he fell into a telephone post hole dug by a person employed by the defendant, a telephone company. In discussing the telephone company's duty, this court said:

"The rule seems to be well established that where, in the making of an improvement of any kind, it is manifest that injury is likely to result, unless due precautions are taken, a duty rests upon him who causes the work to be done to see that all necessary precautions are taken. . . . It is really immaterial, in this view of the case, whether Zimmerman[, the hole digger,] was an independent contractor or not. It was the legal duty of the defendant to properly safeguard the holes. There is no evidence that the defendant transferred this duty to another. We are in serious doubt as to whether it could. . . .

"There is a distinction between injuries resulting from the work itself, and where the wrongful or careless act is in connection with some collateral work or matter. A distinction is made, indeed, between a contract, whereby the independent contractor is required to dig a deep pit or well, and a third person is injured by falling into that well, and a case where a contractor is authorized to build a house, which in itself is not dangerous, but while building it he drops a plank upon the head of a passerby. In one case, the injury is occasioned by the subject of the contract itself, or the thing constructed under the contract. In the other, it is occasioned by an act collateral to the construction." *Ruehl,* 135 N.W. at 795–96.

[¶ 22] *Ruehl* involved the existence of a hazardous condition, an unguarded hole in the ground in which a child fell. Here, the employee of an independent contractor is claiming an injury caused by a hazardous or dangerous jobsite. In *Fleck* we recently considered a similar claim under Restatement (Second) of Torts §§ 416 and 427.[2] We distinguished between members of the

---

2. Section 416 says:

"Work Dangerous in Absence of Special Precautions

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Section 427 says:

"Negligence as to Danger Inherent in the Work

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to

general public injured by worksite negligence and injured employees of an independent contractor, and we held an employer of an independent contractor is not vicariously liable to the independent contractor's employees for inherent dangers or peculiar risks at a jobsite under Sections 416 and 427. To the extent the Pechtls' argument is based upon language in *Ruehl* about a dangerous condition like a deep pit or well, our decision in *Fleck* is dispositive of a claim by an employee of the independent contractor.

[¶ 23] The Pechtls also contend Conoco is vicariously liable for any negligence by Schmidt because he was an actual agent of Conoco, or a borrowed or dual employee. They rely upon evidence of Schmidt's near-exclusive working relationship with Conoco over the previous five years and argue Conoco controlled Schmidt to the extent he virtually became an agent or a borrowed or dual employee of Conoco.

[¶ 24] The issue of Schmidt's relationship with Conoco was involved with our analysis of § 414. Schmidt's status as a Steier employee and our resolution of the retained control issue are dispositive of the Pechtls' actual agency argument.

 [¶ 25] Other courts have recognized liability under a borrowed or dual employee doctrine in some contexts. *Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909); *Doucet v. Gulf Oil Corp.,* 783 F.2d 518 (5th Cir.1986); *Nepstad v. Lambert,* 235 Minn. 1, 50 N.W.2d 614 (1951). See 27 Am.Jur.2d *Employment Relationship* §§ 5, 6 (1996). However, the applicability of the doctrine depends on whether there is authoritative control over the manner and details in which the claimed borrowed or dual employee performs work. See *Anderson; Doucet; Nepstad.*

[¶ 26] Assuming, without deciding, the doctrine applies in this context, the Pechtls have not called our attention to evidence showing Conoco exercised authoritative control over the manner and details in which Schmidt

such others by the contractor's failure to take

performed his work. The evidence does not support an inference Schmidt was a borrowed or dual employee of Conoco. We therefore hold Conoco is not vicariously liable for any negligence by Schmidt.

[¶ 27] We affirm the summary judgment dismissing the Pechtls' action against Conoco.

[¶ 28] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

reasonable precautions against such danger.''