1998 ND 157

Norma Charlene GESSNER,
Plaintiff and Appellant,

v.

CITY OF MINOT, a Municipal Corpora-
tion, and Ward County Water Manage-
ment District, Defendants and Appellees.

Civil No. 980069.

Supreme Court of North Dakota.

Aug. 18, 1998.

Sara B. Gullickson, of Gunhus, Grinnell, Klinger, Swenson & Guy, Fargo, for plaintiff and appellant.

Jason R. Vendsel, of McGee, Hankla, Backes & Dobrovolny, Minot, for defendant and appellee City of Minot, Gary H. Lee (argued), and Kay M. Randall (appearance), of Olson Burns Lee, Minot, for defendant and appellee Ward County Water Management District.

VANDE WALLE, Chief Justice.

[¶ 1] Norma Charlene Gessner appealed from judgments dismissing her wrongful death action against the City of Minot and the Ward County Water Management District. We hold Gessner failed to perfect service of process upon Minot and, consequently, the court did not acquire personal jurisdiction over Minot. We further hold there are genuine issues of material fact relevant to the District's potential liability. We affirm the judgment dismissing Minot but reverse the summary judgment dismissing the District and remand for a trial on the merits.

[¶ 2] Gessner's four-year-old son, Cory Hammond, drowned on July 26, 1992, when he fell from a concrete flood control device on the Souris River, located adjacent to Oak Park in Minot. The structure was part of a flood control project constructed by the United States Army Corps of Engineers. The District acted as the sponsoring agency for the project, and agreed to provide "all lands, easements, and rights-of-way necessary for the construction and subsequent maintenance of the channel improvement" and to "[m]aintain and operate all of the works for the channel improvement after the completion" of the project. The project was completed and transferred to the District for control of operation and maintenance, effective December 15, 1981. By resolution of the City Council, Minot agreed to provide for the "operation and maintenance of all of the project within the City of Minot" as of February 15, 1982.

[¶ 3] After Cory's death in 1992, Gessner filed a wrongful death action against Minot and the District. Minot moved for dismissal, alleging insufficient service of process upon the city. The district court granted the motion, entered an N.D.R.Civ.P. 54(b), certification, and Gessner appealed to this Court. In *Gessner v. City of Minot*, 529 N.W.2d 868, 870 (N.D.1995), we held the district court's 54(b) certification was improvidently granted, and we dismissed the appeal. The District then filed a motion for summary judgment, claiming the action against it should be dismissed because the District had no control over the flood control structure at the time of Cory's death. The district court granted summary judgment, dismissing Gessner's claim against the District. Gessner appealed.

Service Upon Minot

[¶ 4] Gessner attempted to commence her action against Minot by serving a summons and complaint on Robert A. Schempp, the Minot City Manager. The district court found this was insufficient service of process, because Gessner should have served a member of Minot's governing body. Gessner claims service upon the city manager was adequate. We disagree.

[¶ 5] Valid service of process is necessary to assert personal jurisdiction over a defendant. *Smith v. City of Grand Forks*, 478 N.W.2d 370, 371 (N.D.1991). The procedure for serving process upon a city is directed by N.D.R.Civ.P. 4(d)(2)(E):

(d) *Personal Service.*

. . . .

(2) *How Service Made Within the State.* Personal service of process within the state must be made as follows:

. . . .

(E) upon a city, township, school district, park district, county, or any other municipal or public corporation, by deliv-

ering a copy of the summons to any member of its governing board. . . .

Specific requirements for service of process must be strictly complied with, and a judgment based on service where the procedural requirements of the rule have not been followed is void. *Farrington v. Swenson*, 210 N.W.2d 82, 83 (N.D.1973).

[¶ 6] Minot has adopted the city council form of government. Under N.D.C.C. § 40–08–01 Minot's governing body is composed of the mayor and the city aldermen. Minot has also adopted a city manager plan under N.D.C.C. ch. 40–10 and has hired a city manager to be its chief administrative officer under N.D.C.C. § 40–10–03. However, the city manager is not a member of the city's governing body and is not, therefore, a proper person for making service of process on the city. *See, e.g., Nissen v. City of Fargo*, 338 N.W.2d 655, 657 (N.D.1983) (holding service of process on city auditor was not service on city commissioners). We conclude the district court properly determined there was insufficient service of process on Minot.

Unity in Interest of the Codefendants

[¶ 7] Gessner asserts even though she failed to properly serve Minot and the statute of limitations has run for obtaining proper timely service, she should be allowed to now serve Minot and have the service relate back to her service upon the District as a codefendant "united in interest" with Minot under N.D.C.C. § 28–01–38:

> An action is commenced as to each defendant when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him. . . . .

Under this statute an action is deemed to have been commenced against a defendant when the summons is served upon a party who is united in interest with that defendant. We have not previously construed the phrase "united in interest" in the context of this statute. However, New York has a similar

provision, and we look for guidance from its court's interpretations to construe our statute.[1]

[¶ 8] The New York Court of Appeals has held that parties are "united in interest" if the subject matter of the action is such that both parties "stand or fall together and . . . judgment against one will similarly affect the other." *Mondello v. New York Blood Center*, 80 N.Y.2d 219, 604 N.E.2d 81, 85, 590 N.Y.S.2d 19 (1992), citing *Prudential Ins. Co. v. Stone*, 270 N.Y. 154, 159, 200 N.E. 679 (1936). Under those circumstances, the party not timely served is charged with notice of the institution of the action and, because of the relationship with the timely served party, is deemed not prejudiced in maintaining a defense on the merits of the otherwise barred claim. *Mondello*, 590 N.Y.S.2d 19, 604 N.E.2d at 85. Thus, for instance, partners are united in interest because they are personally and vicariously liable for the torts of their co-partners committed within the scope of the partnership business. *Connell v. Hayden*, 83 A.D.2d 30, 443 N.Y.S.2d 383, 395 (1981). Where, however, the action is one to recover for tort "persons who are charged with concurrent negligence producing plaintiff's injuries will not be held to be 'united in interest' absent some relationship between them giving rise to vicarious liability for the acts of the other." *Connell*, 443 N.Y.S.2d at 396–97.

[¶ 9] Parties are not united in interest under the New York statute if each could assert different defenses to the plaintiff's claims, such that untimely service upon one of them may prevent that party from conducting an appropriate investigation of a defense which the timely served defendant has no interest or desire to pursue. *See, e.g., Mfrs. & Traders Trust Co. v. Lindauer*, 135 Misc.2d 132, 513 N.Y.S.2d 629, 637–38 (1987). Under New York's interpretations of the united-in-interest concept the most important consideration is whether the party timely served is obligated by necessity to protect

---

1. The New York provision is found at CPLR § 203(b): "A claim asserted in the complaint is interposed against the defendant or co-defendant united in interest with him when: (1) the summons is served upon the defendant. . . ." The source notes to § 28–01–38 indicate its deriva- tion as "Wait's (N.Y.) Code, 99; Harston's (Cal.) Practice, 350." *See Estate of Zins by Kelsch v. Zins*, 420 N.W.2d 729 (N.D.1988) (noting decisions of states from which our law is derived are highly persuasive).

the nonserved defendant by investigating and preparing all defenses available to both parties. Under those circumstances, timely service of process on the original party acts to satisfy the underlying purpose of the statute of limitations to ensure a defendant has a fair opportunity to prepare a defense.

■ [¶ 10] The New York decisions provide helpful guidance for construing and applying the term "united in interest" under N.D.C.C. § 28–01–38. We conclude two parties are united in interest when they are in such relation to each other with regard to the subject matter of the plaintiff's action that they will necessarily stand or fall together, a judgment against one will necessarily result in liability upon the other, and neither can reasonably raise a defense which is unavailable to the other. Under that definition, we conclude Minot and the District are not codefendants united in interest.

[¶ 11] In reading the allegations · in the pleadings, it is readily apparent Minot and the District have available different defenses and may not "stand or fall together" on the plaintiff's claims against them. For example, Minot could argue the District had a nondelegable duty to design and construct a flood control structure not unreasonably dangerous to children, but failed to do so. The factfinder could conclude Minot's agreement to maintain and operate the structure after it was completed was not an assumption of the duty to design and construct a reasonably safe structure and the operation and maintenance of it was not the proximate cause of the victim's death. Contrarily, the District could argue Minot became an independent contractor when it resolved to undertake all operation and maintenance of the structure and the victim's death was proximately caused by Minot's failure, after several years of operation and observation of the danger it posed, to use reasonable care in maintaining the structure to make it reasonably safe for children. The District could further argue it owed no duty to the victim to maintain the structure in a reasonably safe condition.

■ [¶ 12] The question of agency is a fact question for the trier of fact. *E.g., Red River Commodities, Inc. v. Eidsness,* 459 N.W.2d 805, 810 (N.D.1990). The factfinder

could also determine Minot was acting as the agent of the District in providing maintenance and care of the flood control structure and the District is vicariously liable on a theory of *respondeat superior* for the city's negligence in that undertaking.

[¶ 13] All of these potential defenses hinge upon factual determinations not yet fully developed on the record. It is enough that these defendants do not necessarily stand or fall together on plaintiff's claims against them. Significant and separate defenses are available to each of them, and their interests may be more aptly described as being antagonistic than united. We therefore hold service of the summons upon the District did not constitute commencement of the action against Minot, under N.D.C.C. § 28–01–38. The district court did not err in dismissing Gessner's complaint against Minot for insufficiency of service of process.

Summary Judgment Dismissal
of the District

■ [¶ 14] The trial court granted summary judgment dismissal of Gessner's action against the District, concluding:

[N]o evidence has been presented that the Ward County Water Management District has exercised control or direction over the flood control improvements within the City of Minot since 1982. Neither has it been demonstrated that the Ward County Water Management District has retained any ability to control or otherwise supervise the City of Minot's actions.

. . . .

It appears that the supervision of the Corps of Engineers is limited to maintenance and upkeep. No evidence has been presented [t]hat the Ward County Water Management District has such authority.

[¶ 15] We review the court's dismissal of Gessner's claim against the District under the summary judgment standards of N.D.R.Civ.P. 56. Summary judgment is a procedure for deciding an action without a trial when there are no genuine disputes as to either the material facts or the inferences to be drawn from the undisputed facts, or if resolving the disputed facts would not change the result. *Pechtl v. Conoco, Inc.,* 1997 ND

161, ¶ 6, 567 N.W.2d 813. When considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can be reasonably drawn from the evidence. *Stanley v. Turtle Mountain Gas & Oil,* 1997 ND 169, ¶ 6, 567 N.W.2d 345.

[¶ 16] The complaint alleges the District knew children were regularly attracted to the flood control structure located adjacent to a city park, and the District knew or should have known the structure "created an unreasonable risk of serious harm to members of the public, especially children, and knew or should have known that children, because of their age, would not realize the seriousness of the risk." The complaint further alleges the District negligently failed to warn the public of the existence of the dangerous condition of the structure, failed to construct a barrier to prevent children from entering the structure, and failed to warn of the dangerous condition or to eliminate the danger by installing guardrails or other protection.

[¶ 17] In *Mikkelson v. Risovi,* 141 N.W.2d 150, 154 (N.D.1966), the court applied the principles set forth in Reinstatement, Second, Torts § 339:

> *§ 339. Artificial Conditions Highly Dangerous to Trespassing Children*
>
> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

In 1971, the District agreed to sponsor the construction of the flood control structure by the Corps of Engineers. In undertaking that responsibility the District agreed to hold and save harmless the United States from any damages due to construction of the project and to maintain and operate the improvement after its completion. When the structure was completed in 1981, the District accepted responsibility for operation and maintenance of the structure.

[¶ 18] The District also has a statutory responsibility for the structure and authority to take whatever action it deems necessary in that regard:

> *When dams constructed by federal agency under control of district.* Any dam, dike, or other water control device or flood control project constructed by or with the assistance of any federal agency but which is not maintained or operated by any federal agency shall become the responsibility of the district where it is located. The district may take any action concerning this dam, dike, or other water control device it deems feasible or necessary.

N.D.C.C. § 61–16.1–40.

[¶ 19] From admissions in the District's brief, one could infer the District, prior to accepting operation and maintenance responsibilities in 1981, had knowledge of facts the structure constituted an unreasonably dangerous hazard for children:

> On June 22, 1977, DeeAnn Berry fell from the flood control structure.... This drowning was fully investigated by the Minot Police Department....
>
> ....
>
> In addition to being aware of the 1977 drowning, Minot was generally aware of the dangers the flood control structures presented. Minot was aware particularly that children would sometimes play near

the structures, and had explored the possibilities of precautions, such as a fence around the structure.... Minot further issued repeated warnings about the dangers that the flood control works presented.

. . . .

[T]he alleged safety defects at the site from which Cory fell were "open and obvious," at least insofar as Minot was concerned.... This was known as early as 1977 when a drowning occurred at the same site.

If in 1977 Minot knew or should have known the obvious and unreasonable risk of danger this structure presented to children, there is at least an inference the District, who, in 1981, assumed total responsibility for maintenance and operation, should also have known of the obvious risk and danger. The District asserts, however, it had no control of the structure or responsibility for the public safety after the city assumed operation and maintenance of the structure in February 1982.

[¶ 20] There has been no development of facts on this record as to who has legal title to this flood control structure or who has such control or authority to be considered a possessor of the structure and adjacent land. The facts might show Minot was acting as an agent of the District in operating and maintaining the flood control structure, and the District, as Minot's principal, is vicariously liable for any negligence by Minot in performing that undertaking. The District receives periodic reports of the city's operation and maintenance activities, from which a factfinder could also infer the District retained control and responsibility for the structure. Once developed, the facts might also show the flood structure was negligently designed, causing an unreasonable risk of harm to children, and the District negligently breached its duty as sponsor of the project by failing to eliminate the risk.

[¶ 21] Although the question of whether a defendant owes a duty is generally a preliminary question of law for the court, when the existence of a duty depends upon the resolution of factual issues, those facts must be resolved by the trier of fact. *Pechtl*

*v. Conoco, Inc.*, 1997 ND 161, ¶ 7, 567 N.W.2d 813. We conclude there are genuine issues of material fact regarding the District's authority to control the flood structure at the time of the victim's death and regarding its duty, or lack thereof, to provide a structure free from unreasonable risk of harm to children in accordance with the Restatement Section 339. There are numerous factual questions which could potentially result in either direct or vicarious liability by the District on Gessner's claims. These unresolved factual issues preclude a determination, as a matter of law, that the District has no liability in this case. We hold, therefore, the district court erred in granting the District's motion for summary judgment dismissal.

[¶ 22] We affirm the district court's order dismissing the City of Minot as a party defendant, we reverse the district court's order dismissing the District as a party defendant, and we remand for a trial on the merits against the District.

[¶ 23] SANDSTROM, NEUMANN and MARING, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

[¶ 24] I agree the district court properly decided there was insufficient service of process upon the City of Minot itself. Still, I deplore the special technical treatment created by our rules of procedure for service of process upon a governmental entity, as differentiated from a business entity. *Compare* service of process on a business entity (delivery "to an officer, director, superintendent or managing or general agent," under N.D.R.Civ.P. 4(d)(2)(D)(i)) with service on a governmental entity (delivery "to any member of its governing board," under Rule 4(d)(2)(E)). While it may be desirable to provide specifically for service on governmental entities for some reasons, there seems to be no reason that the rules do not authorize service on the chief executive officer of a governmental entity. More than any quasi-legislative delegate of a governmental unit, the chief executive officer would be the

most responsible figure for acting to defend against a claim.

[¶ 25] "The city manager shall be the chief administrative officer of the city...." N.D.C.C. § 40–10–03. Elsewhere, generally, the chief administrative officer or chief executive of a governmental unit qualifies for service of process on the entity. Notable is F.R.Civ.P. 4(j)(2): "Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer...." It is not just ironic, but unjust, that the service on the City in this case would have been perfectly valid if this case had been brought in federal court. We of this Court, who are responsible for making the procedural rules, should be more contemplative of the potential for injustices in their content. I hope our Joint Procedure Committee will recommend a revision to remedy this differential treatment that can lead to injustices for other litigants, and that this Court will adopt it.

[¶ 26] I concur in reversing the summary judgment dismissing this claim against the Water Resource District. There are numerous issues of fact concerning both its direct and vicarious liability.

[¶ 27] I respectfully dissent, however, from the majority's conclusion that the Water Resource District cannot be "a joint contractor or otherwise united in interest" with the City of Minot.[2] In my opinion, most of the issues of fact concerning the District's vicarious liability are equally issues of fact for its unity of interest with the City of Minot. The majority's interesting speculations about different defenses possible for the City and the District mirror undecided factual questions for joint liability.

[¶ 28] A city and a water resource district can jointly exercise their powers. Part of N.D.C.C. § 54–40–01(1) declares: "Two or more governmental units or municipal corporations having in common any portion of their territory or boundary, by agreement entered into through action of their governing bodies, may *jointly or cooperatively* exercise their respective separate powers, or any power *common to the contracting parties* or any similar powers...." (My emphasis). The powers of a municipality include: "*Flood control projects.* To acquire, construct, maintain, operate, finance, and control flood control projects, both within and adjacent to such municipality, and for such purpose to acquire the necessary real property and easements therefor by purchase and eminent domain, and to adopt such ordinances as may reasonably be required to regulate the same." N.D.C.C. § 40–05–01(68). *See also* N.D.C.C. § 40–05–01(59) empowering a city "[t]o accept aid from, *cooperate and contract with,* and to comply with and meet the requirements of any federal or state agency for the establishment, construction, and maintenance of public works, including dams and reservoirs ... *for flood control* ...", et cetera. (My emphasis). "Cities shall also have the power to enter into an agreement with any such government, agency, or municipality ... to hold such government, agency, or municipality harmless from any and all liability or claim of liability arising from the establishment, construction, and maintenance of such works, and to indemnify such government, agency, or municipality for any such liability sustained by it ...", et cetera. *Id.* A water resource district is specifically empowered under N.D.C.C. § 61–16.1–09(3), (my emphasis), to "*contract with* the state or federal government, or any department or agency thereof, or *any municipality* within the district, *in* furnishing assurances and *meeting local cooperation requirements of any project involving control ... of water.*"

[¶ 29] The City and the District jointly agreed on a flood control structure. That should make it a joint project. Partners, joint venturers,[3] and agency relationships of-

2. *See* 46 Am.Jur.2d *Joint Ventures* § 73 (1994)(footnotes omitted): "Service upon a joint venture may be made by personally serving process on any one of the joint venturers. Service on any joint venturer is deemed service on all the others on the theory that each joint venturer is the principal and the agent of the others."

3. *See* 46 Am.Jur.2d *Joint Ventures* § 3 (1994)(footnotes omitted): "Joint ventures are, in general, governed by the same rules as partnerships." And, § 24: "Each member of a joint venture may be regarded as both an agent for his coventurers and a principal for himself...." *See*

ten have agreements between themselves on how to share their joint responsibilities. For examples, *compare* N.D.C.C. ch. 45–16 ("Relations Of Partners To Each Other And To Partnership"), with N.D.C.C. ch. 45–15 ("Relations Of Partners To Persons Dealing With Partnership"), particularly N.D.C.C. § 45–15–05 ("Partnership liable for partner's actionable conduct."). Similarly, *compare* N.D.C.C. ch. 3–02 ("Relation Between Principal And Agent"), with N.D.C.C. ch. 3–03 ("Relation Between Principal And Third Person"), and N.D.C.C. ch. 3–04 ("Relation Between Agent And Third Person"). Contracts between joint venturers do not defeat the unity of interest their conduct jointly manifests to others.

[¶ 30] In my opinion, despite the majority's speculations about different defenses by each, there are many factual questions on the unity of interest between the City and the District on this common flood control structure. Findings on those factual elements could implement N.D.C.C. § 28–01–38 to make the valid service of process on the District binding on the City as "a joint contractor or otherwise united in interest" with the District.

[¶ 31] To me, this project sounds like a joint one, it looks like a joint one, and these entities acted like it was a joint project. I believe Gessners should have the opportunity to prove at a trial it was a joint project.

[¶ 32] For these reasons, I would also reverse the summary judgment dismissing the City of Minot, and I would remand for a complete determination of the factual disputes about their unity of interest. Those factual disputes are inextricably intertwined with the unresolved factual disputes on vicarious liability of the District that are otherwise remanded. The dismissal as to the City should be provisional on findings that it was not a "joint contractor or otherwise united in interest." Therefore, I dissent from affirm-

ing the summary judgment completely dismissing this claim against the City of Minot.

[¶ 33] Herbert L. Meschke

*also* 56 Am.Jur.2d *Municipal Corporations, Counties, And Other Political Subdivisions* § 217 (1971)(footnote omitted): "[T]here seems to be no reason in law which prevents two or more municipal corporations from engaging in a joint enterprise or project, except as they may be limited by constitutional or statutory provisions of the particular jurisdiction in which they are located."