2004 ND 49

Michael BEAUDOIN, Plaintiff and Appellant

v.

SOUTH TEXAS BLOOD & TISSUE CENTER, Defendant and Appellee.

No. 20030148.

Supreme Court of North Dakota.

March 1, 2004.

Kay Nord Hunt (argued), Robert J. King, Jr., and Diane M. Odeen, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, and Orell D. Schmitz, Schmitz & Schmidt, Bismarck, ND, for plaintiff and appellant.

Michael T. Andrews (argued) and H. Patrick Weir, Vogel Law Firm, Bismarck, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Michael Beaudoin appealed from a judgment dismissing without prejudice his action against South Texas Blood & Tissue Center ("South Texas"). We conclude South Texas was properly served with process, and we reverse and remand for further proceedings.

[¶ 2] Beaudoin had his right patellar tendon surgically replaced on August 23, 2000, in Dickinson, North Dakota, with a tendon removed from a cadaver in Texas. At the request of a Connecticut corporation, South Texas shipped the tendon to Dickinson. Beaudoin sued South Texas, alleging the tendon was not sterile, and that, as a result, he contracted an infection in his right knee. A professional process server delivered a copy of the summons and complaint to Betty Nickerson, South Texas's Executive Office Manager, on August 19, 2002. South Texas did not answer or appear, and a default judgment was entered against it. Relying on N.D.R.Civ.P. 12(b), and N.D.R.Civ.P. 60(b)(i), (iv) South Texas moved to vacate the default judgment and to dismiss the complaint "on the grounds that the Court lacks personal jurisdiction over the defendant."

[¶ 3] South Texas submitted an affidavit of Nickerson stating, in part:

1. I am the Executive Office Manager for the South Texas Blood and Tissue Center (Blood and Tissue Center). I have been employed by the Blood and Tissue Center for 21 years. As the Executive Office Manager, I am responsible for providing administrative support for the Vice Presidents, and for Dr. Norman D. Kalmin, M.D., President/CEO and Medical Director of the Blood and Tissue Center.

[2]. I am not an officer, director, superintendent, managing or general

agent, partner, or associate of the South Texas Blood and Tissue Center.

[3]. I am not an agent authorized to receive service of process on behalf of the South Texas Blood and Tissue Center.

[4]. On August 19, 2002, I received a telephone call from the company receptionist, who asked me to sign for a document. As it turned out, this document was the Summons and Complaint in the matter of *Michael Beaudoin v. South Texas Blood and Tissue Center.* The document was not addressed to any particular person, but was simply directed to the South Texas Blood and Tissue Center.

[5]. I delivered the document to Dr. Kalmin, who then delivered it to Mary Beth Fisk, Vice President of Tissue Services. Ms. Fisk sent a copy of the document to Donna Respondek, Vice President of Financial Services, requesting that Ms. Respondek file a claim with the insurance company.

[6]. Ms. Respondek was on vacation at the time, and the copy of the Summons and Complaint sent to her was thereafter accidentally misfiled in the Financial Services Department, without any action taken. This was discovered on January 8, 2003, when a call was received from Mr. Beaudoin's attorney informing us of the default judgment.

[¶ 4] Charles N. Lambrecht, a professional process server engaged to serve South Texas, stated, in part, in his affidavit:

I was contacted by the law firm of Schmitz and Schmidt to serve a Summons and Complaint on the South Texas Blood & Tissue Center. After receipt of those papers, I proceeded to South Texas Blood & Tissue Center and upon entry, requested of the receptionist a Managing Agent or Director of the cor-

poration. After waiting for a period of time, Betty Nickerson was brought to me and identified as the Executive Office Manager and authorized to accept the papers. I told her I was delivering legal papers on her and she certainly seemed to understand what was happening.

[¶ 5] The trial court ruled South Texas was not properly served and the court, therefore, did not acquire personal jurisdiction over South Texas. The court ordered the default judgment vacated, and it dismissed the action without prejudice. A judgment of dismissal without prejudice was entered on March 31, 2003.

[¶ 6] On appeal, Beaudoin contends (1) the judgment is appealable because the claim is for malpractice and the statute of limitations has run; (2) South Texas was properly served under N.D.R.Civ.P. 4(d); (3) South Texas had sufficient relationships or contacts with North Dakota to subject it to the jurisdiction of North Dakota courts; and (4) the default judgment was valid and should not have been vacated.

## I

[¶ 7] While ordinarily not appealable, "a dismissal without prejudice may be final and appealable if it has the practical effect of terminating the litigation in the plaintiff's chosen forum." *Winer v. Penny Enterprises, Inc.,* 2004 ND 21, ¶ 6, 674 N.W.2d 9. A judgment of dismissal without prejudice is appealable if the plaintiff will be barred by the statute of limitations from bringing another action. *Jaskoviak v. Gruver,* 2002 ND 1, ¶ 8, 638 N.W.2d 1.

[¶ 8] Section 28–01–18(3), N.D.C.C., provides a two-year statute of limitations for "[a]n action for the recovery of damages resulting from malpractice."

Malpractice is the failure of one rendering professional services to exercise the degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession, which results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them. *Johnson v. Haugland*, 303 N.W.2d 533, 538 (N.D.1981). *See also Jilek v. Berger Elec., Inc.*, 441 N.W.2d 660, 661 (N.D.1989) (stating "malpractice is a professional's failure to exercise the requisite degree of skill and learning in providing services," or, more simply, "professional negligence").

[¶ 9] While "any alleged professional malpractice may be framed generally in either tort or contract theory," *Johnson*, 303 N.W.2d at 539 n. 4, "[i]n a malpractice case, the malpractice statute of limitations controls over statutes of limitations applicable to contract or other tort actions," *Jilek*, 441 N.W.2d at 661. "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of ... science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience." *Sime v. Tvenge Assocs. Architects and Planners, P.C.*, 488 N.W.2d 606, 609 (N.D.1992) (citations omitted).

[¶ 10] We are satisfied that the harvesting, preservation, and delivery of body parts involves "science or art requiring special skills not ordinarily possessed by lay persons," *Sime*, 488 N.W.2d at 609, and we, therefore, conclude that this case is governed by the two-year statute of limitations for malpractice prescribed by N.D.C.C. § 28–01–18(3). Thus, "[i]f the dismissal stands, [Beaudoin] will be barred from bringing another action by N.D.C.C.

§ 28–01–18(3)." *Jaskoviak*, 2002 ND 1, ¶ 8, 638 N.W.2d 1. We conclude the dismissal without prejudice entered in this case is, therefore, appealable.

## II

[¶ 11] "Valid service of process is necessary to assert personal jurisdiction over a defendant." *Gessner v. City of Minot*, 1998 ND 157, ¶ 5, 583 N.W.2d 90. Thus, we must determine if South Texas was properly served with process under N.D.R.Civ.P. 4(d), which provides, in part:

(2) *How Service Made Within the State.* Personal service of process within the state must be made as follows:

. . . .

(D) upon a domestic or foreign corporation ... by (i) delivering a copy of the summons to an officer, director, superintendent or managing or general agent, ... or to an agent authorized by appointment or by law to receive service of process in its behalf. . . .

(3) *How Service Made Outside the State.* Service upon any person subject to the personal jurisdiction of the courts of this state may be made outside the state:

(A) in the manner provided for service within this state, with the same force and effect as though service had been made within this state.

[¶ 12] When what is now N.D.R.Civ.P. 4(d)(2)(D) was adopted in 1957, it superseded N.D.R.C.1943, § 28–0606, which provided, in part: "If the defendant in a civil action is a domestic corporation, service of the summons shall be made upon the president, secretary, cashier, or treasurer, or upon a director or a managing or authorized agent thereof." The provision was drawn from C.L.1913, § 7426(4), R.C. 1899, § 5252(4), and R.C. 1895, § 5252(4), which was, in turn, drawn from Code of

Civil Procedure § 102, Revised Codes of the Territory of Dakota (1877). The provision was previously codified in Code of Civil Procedure § 86, Laws of Dakota 1867–8, which provided for service of a summons upon a corporation's "president or other head of the corporation, secretary, cashier, treasurer, a director, or managing agent thereof." Volume 1, Revised Codes of the Territory of Dakota (1883), notes the source of § 102 of the Code of Civil Procedure was Wait's Code § 134. At page v of the Preface to the Revised Codes of the Territory of Dakota (1877), the New York source of our provision is also noted:

> The [1877 Code of Civil Procedure] originated also in New York, where it was enacted into law. In an abridged form it was enacted in Dakota in 1868, and took effect on the first day of June in that year.

The New York antecedent of our provision for service of process on corporations was enacted in 1848, as part of the Code of Procedure, "known as the 'Field Code,' " after David Dudley Field, one of the commissioners on practice and pleadings proposing the code. Mildred V. Coe and Lewis W. Morse, *Chronology of the Development of the David Dudley Field Code,* 27 Cornell Law Rev. 238, 239–42 (1942).

[¶ 13] Our rule on service of process upon a corporation, and its statutory antecedents here extending as far back as 1868, have authorized service upon a managing agent, as does N.Y.C.P.L.R. § 311(a)(1) (McKinney 2001), which, as the source notes indicate, is derived from "C.P. (Field Code) 1848, § 134," and provides for service of process upon a corpo-

ration by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." Because our rule and N.Y.C.P.L.R. § 311(a)(1) (McKinney 2001) share a common derivation from New York's Field Code of Procedure § 134 (1848), New York court decisions, like "California court decisions construing Field Code[1] sections, while not binding, are entitled to respectful consideration, and may be 'persuasive and should not be ignored.' " *Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473, 477 n. 4 (N.D.1986) (quoting *Becker v. Becker,* 262 N.W.2d 478, 483 (N.D.1978)).

[¶ 14] In New York, a process server is entitled to rely upon a defendant corporation's employees' representations about an individual's authority to receive service of process for the corporation. *See* the description of service in *Fashion Page, Ltd. v. Zurich Ins. Co.,* 50 N.Y.2d 265, 428 N.Y.S.2d 890, 406 N.E.2d 747, 749 (1980):

> At a hearing before a Special Referee, the process server testified.... When he arrived at the defendant's offices he went to the receptionist and stated: "I have a summons and complaint to serve on Zurich. Can you please tell me who I might see or who handles this." The receptionist told him to proceed down a certain corridor and "see the girl sitting down there." He did as directed and found Ann Robertson sitting at a desk. He told her that he had a summons and complaint to serve on Zurich. She asked to see the papers and, after look-

---

1. As footnote 4 in *Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473, 476–77 (N.D.1986) shows, the "Field Code" referred to in connection with California court decisions was a "Civil Code proposed for New York by David Dudley Field," which, "although not adopted by New York for which it was proposed in 1865, was adopted by Dakota Territory in 1865 and by California in 1872," and is distinguished from "the 'more famous code of Civil Procedure, which is most frequently referred to as "the Field Code' " " (quoting W. Fisch, Civil Code: *Notes for an Uncelebrated Centennial,* 43 N.D.L.Rev. 485 (1967)).

ing them over, said "Okay, leave it with me * * * I'll take it." When he asked her if she was authorized "to accept this", she stated "I can take it."

The receptionist testified that she was responsible for directing visitors to the proper person within the office. Ann Robertson stated that she was the executive secretary for Joseph Scanlon, who was a member of the board of directors and the vice-president in charge of the New York office.... [S]he said that she was not an officer or managing agent of the corporation and had not been expressly authorized to accept service on its behalf.

She admitted, however, that she had received the summons and complaint in this case and that she had informed Mr. Scanlon of this when he returned from lunch. At his direction she had forwarded the papers to the company's legal department by interoffice mail.

The Court of Appeals held the service was proper, explaining:

The purpose of CPLR 311 (subd. 1) is to give the corporation notice of the commencement of the suit....

A corporation may appoint an agent to accept service without observing the formalities necessary to "designate" an agent pursuant to CPLR 318....

Thus a corporation may assign the task of accepting process and may establish procedures for insuring that the papers are directed to those ultimately responsible for defending its interests.... In such a case the process server cannot be expected to know the corporation's internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service. In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained.

(Citations omitted.) *Fashion Page, Ltd.,* 428 N.Y.S.2d 890, 406 N.E.2d at 750–51. *See also Evergreen Marine Corp. v. Welgrow Int'l, Inc.,* 942 F.Supp. 201, 205 (S.D.N.Y.1996) (stating "it is well settled in New York that a process server is entitled to rely upon the representations of an employee who claims to be authorized to receive service of process"). The United States Court of Appeals for the Second Circuit has also recently addressed New York's requirements for service of process on a corporation:

In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service. *Fashion Page,* 50 N.Y.2d at 272–73, 428 N.Y.S.2d 890, 406 N.E.2d 747. As long as the process server's reliance on corporate personnel is reasonable, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept service. *Id.* at 273–74, 428 N.Y.S.2d 890, 406 N.E.2d 747.

*Old Republic Ins. Co. v. Pacific Fin. Servs. of America, Inc.,* 301 F.3d 54, 57 (2d Cir.2002).

[¶ 15] This Court addressed service upon a corporation's "managing agent" in *Brown v. Chicago, Milwaukee & St. Paul Ry. Co.,* 12 N.D. 61, 95 N.W. 153 (1903), which involved service upon a foreign railroad corporation in North Dakota. The defendant's attorney's affidavit said:

the only service of summons and complaint in this action was that made upon W.H. Gross, who ... was local station agent for defendant at the city of Fargo, in Cass County, N. D.... That W.H. Gross ... had authority to act for it in the sale of passenger tickets ... and to collect pay for tickets so sold, to receive

and deliver freight, and to collect unpaid charges for freight carried on said railway; with necessary incidental authority for the execution of the above powers, but with no other or further authority to represent it as agent.

*Brown*, 12 N.D. at 64–65, 95 N.W. at 154. This Court said:

This motion presents the question whether the station agent of a foreign railway corporation doing business within this state is a managing agent within the meaning of subdivision 5, § 5252, Rev.Codes 1899, which provides that the summons in a civil action may be served upon a foreign corporation by delivering a copy thereof to the Secretary of State, or to the president, secretary, cashier, treasurer, a director, or managing agent thereof, if within the state, doing business for the defendant. We agree with the trial court that Mr. Gross was enough of a managing agent for defendant to sustain this service. He transacted freight and passenger business for it at its Fargo station or office.... Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made. The statute is satisfied if he be a managing agent to any extent.

*Brown*, 12 N.D. at 65–66, 95 N.W. at 154.

[¶ 16] We note commentators have also espoused a practical approach to corporate service under Fed.R.Civ.P. 4. *See, e.g.,* 28 *Fed. Proc. Lawyers Ed.,* § 65:147 (1996) ("A person not in charge of a corporation's activities within a state may still qualify as a general or managing agent, if his or her position is one of sufficient responsibility so that it is reasonable to assume that he or she will transmit notice of the commencement of an action to his or her superiors."); *Id.* at § 65:148 ("A person having

the title of office manager, general manager, district manager, divisional manager, or the like, is generally a managing or general agent."); 4 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.: Civil 3d,* § 1061, at 311–12 (2002) (Rule 4, Fed. R.Civ.P., "was designed to provide maximum freedom and flexibility in the procedures for giving all defendants ... notice of the commencement of the action and to eliminate unnecessary technicality in connection with service of process."); 4A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.: Civil 3d,* § 1074, at 362–63 (2002) ("In the case of service on a corporation, delivery to an officer or an agent whose position in the organization indicates that there is a high probability that the papers will reach those persons in the organization responsible for protecting the firm's interests in the litigation is sufficient.").

[¶ 17] We recognize that Minnesota courts deem service on a corporate employee based on the employee's self-identification as a person authorized to accept service to be insufficient. *See, e.g., Tullis v. Federated Mut. Ins. Co.,* 570 N.W.2d 309, 313–14 (Minn.1997) (stating "we decline to depart from case law which establishes an employee's representations to a process server are inadequate to find authority to accept service on behalf of the corporation"). Nevertheless, we agree with the approach taken by courts construing N.Y.C.P.L.R. § 311(a), which shares with our rule a common derivation from New York's Field Code of Procedure § 134 (1848), and is consistent with this Court's early construction of our rule's statutory predecessor in *Brown,* 12 N.D. 61, 95 N.W. 153. Under such an analysis, a process server's service of process upon a corporation's Executive Office Manager will be deemed valid if a corporate employee identifies the Executive Office Manager

as a proper person to accept service, the process server reasonably relies on that identifying representation, the Executive Office Manager served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made, and the service results in actual delivery to a person responsible for protecting the corporation's interests in litigation.

[¶ 18] Here, the professional process server asked the defendant's receptionist for a corporate director or managing agent. The receptionist brought to him Betty Nickerson, the defendant's Executive Office Manager, who was identified as one authorized to accept the papers, a representation upon which the process server could reasonably rely. He delivered the summons and complaint to Nickerson, who reasonably appeared to be of sufficient character and rank to make it reasonably certain that the defendant would be apprised of the service made, which appearance was confirmed when Nickerson did, in fact, deliver the summons and complaint to the defendant's "President/CEO and Medical Director." We believe an Executive Office Manager responsible for providing administrative support to the "President/CEO and Medical Director of the Blood and Tissue Center" is of "sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." *Brown*, 12 N.D. at 65, 95 N.W. at 154. We conclude South Texas was validly served in accordance with N.D.R.Civ.P. 4(d). We further conclude, therefore, that the trial court abused its discretion in vacating the default judgment and dismissing the complaint for lack of valid service of process.

[¶ 19] Our decisions in cases such as *Spring Creek Ranch, L.L.C. v. Svenberg*, 1999 ND 113, 595 N.W.2d 323; *Eggl v. Fleetguard, Inc.*, 1998 ND 166, 583 N.W.2d 812; *Gessner v. City of Minot*, 1998 ND 157, 583 N.W.2d 90; and *Brakke v. Rudnick*, 409 N.W.2d 326 (N.D.1987), which did not involve service upon a person represented by a corporate employee as being qualified to accept service, are inapposite to the validity of the service effected here.

III

[¶ 20] We express no views on other issues raised in this appeal that the trial court has not determined. "Our function is one of review, rather than initial determination." *Christl v. Swanson*, 2000 ND 74, ¶ 14, 609 N.W.2d 70.

IV

[¶ 21] The judgment is reversed and the matter is remanded for further proceedings in accordance with this opinion.

[¶ 22] DONOVAN J. FOUGHTY, D.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.

[¶ 23] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.